## Mathew Schmid, Appellant, *v.* Palm Garden Improvement Co.

*Mechanics' liens—Contract not to file liens.*

To prevent a contractor or subcontractor from filing mechanics' liens against a building, there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and the implied covenant should so clearly appear that the mechanic or material man can understand it without consulting a lawyer as to its legal effect: Nice v. Walker, 153 Pa. 123.

A covenant in a building contract, that " the building shall be built, finished and delivered to the owner free of all liens and incumbrances, or any claims whatever that may arise under any action of the contractor or his legal representatives under the contract," does not amount to a covenant on part of the contractor not to file liens, where other provisions of the contract require the production of a certificate that the building is "free from all liens or claims chargeable to the said contractor," with further provisions for the protection of the owner against such claims by the retention of a percentage of the payments stipulated to be made, etc.

The covenant does not say free from any right or debt accruing to the contractor from the contract, but from debts incurred by his " action " in carrying out his contract. In the most favorable interpretation of this clause for the owner it is ambiguous; it is not an express covenant against a contractor's lien, nor does such covenant result from necessary implication. By Mr. Justice Dean.

Argued Jan. 12, 1894. Appeal, No. 456, Jan. T., 1893, by plaintiff, from decree of C. P. No. 3, Philadelphia Co., Sept. T., 1891, No. 728, striking off mechanic's lien. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Rule to strike off mechanic's lien.

The contract between the owners, defendants, and the contractor, the plaintiff, contained among others the following stipulations :

" 8. The contractor shall and will proceed with the said work, and every part and detail thereof, in a prompt and diligent manner, and shall and will do the several parts thereof at such times and in such order as the architects may direct, and shall and will wholly finish the said work according to the said drawings and specifications and this contract at the following times,

viz.: . . . . It being expressly understood and agreed that the said building shall be built, finished and delivered to the owner, free of all liens and incumbrances, or any claims whatever that may arise under any action of the said contractor or his legal representatives under this contract.

"10. The contractor shall be liable for and make good to the owner all damages which the owner may sustain or be subjected to by reason of any negligence of the contractor or any of his employees, laborers, servants or subcontractors, or by reason of any breach on the part of the contractor of any of the agreements herein contained.

"11. In case the contractor shall at any time refuse or neglect to supply a sufficiency of properly skilled workmen and of materials of the proper quality, or shall fail in any respect to prosecute the work with promptness and diligence, or shall fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure, being certified by the architects, the owner shall be at liberty to provide any such materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract, and if the architects shall certify that such refusal or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to employ any other person or persons to finish the same, and to provide the materials therefor, and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for providing the materials or for finishing the work, shall be audited and certified by the architects, and their certificate thereof shall be conclusive upon the parties.

"12. And it is hereby mutually agreed between the parties hereto that the price of said materials and of doing and putting up said work shall be the sum of $43,359, subject to additions

and deductions on account of alterations, as hereinbefore provided, and that such price shall be paid by the owner to the contractor in installments, as follows: The first payment shall be made on the fourteenth day after the contractor shall have commenced work, and the payments shall be made fortnightly thereafter. Each fortnightly payment shall be equal to eighty per cent of the value of the work then complete and not previously paid for according to estimates of value by the architects: Provided, That in each of the said cases the architects shall certify in writing that all the work upon the performance of which the payment is to become due as aforesaid has been done to their satisfaction; and provided, further, that before each payment, if required, the contractor shall produce a certificate from the clerk of the office where liens are filed and recorded, signed by such clerk, that the said building is free from all liens or claims chargeable to the said contractor, and, further, that if the said contractor fails to pay or satisfy all and every legal claim and demand as aforesaid against said building for which, if it is established, the owner of the said building or land might be made liable, and which would be chargeable to the said contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient completely to indemnify itself against such liens or claims until the same shall be effectually satisfied, discharged or canceled, and if there is not sufficient due or coming to satisfy such claims and demands the said contractor covenants to pay the same. The said contractor shall forthwith after the execution of this contract furnish to the owner a list of all subcontractors employed or engaged by him in the performance of this work, and it is expressly covenanted and agreed that the above payments are only to be made provided the wages of all artisans and laborers and all those employed by or furnishing materials to the said contractor on account of this contract shall have been paid and satisfied. Said contractor also agrees to pay subcontractors and parties furnishing materials on account of this contract pro rata on each estimate, and the said subcontractors shall first, if required by the architects, give a release of lien for all work done and materials supplied by them up to date of such payment."

Rule to strike off lien absolute. Plaintiff appealed.

*Errors assigned* were (1) striking off lien, (2) above decree.

*John G. Johnson*, for appellant, cited: Nice v. Walker, 153 Pa. 123; Smith v. Levick, 153 Pa. 522; Long v. Caffrey, 93 Pa. 526; Evans v. Grogan, 153 Pa. 121; Murphy v. Ellis, 153 Pa. 133.

*Alex. P. Colesberry*, *Frank R. Shattuck* with him, for appellee, cited: Schroeder v. Galland, 134 Pa. 277; Bolton v. Hey, 148 Pa. 156; Taylor v. Murphy, 148 Pa. 337; Murphy v. Morton, 139 Pa. 345; Loyd v. Krause, 147 Pa. 402.

OPINION BY MR. JUSTICE DEAN, July 11, 1894:

Schmid, a contractor and builder, filed a lien for work done in the construction of the "Palm Garden Theater," which work was done under a contract with "The Palm Garden Improvement Company," as owner. The contract is dated October 11, 1890, and the work under it was completed May 23, 1891.

During the progress of the work, many alterations and additions were made, not specified in the original contract. Schmid, alleging the contract price, $43,359, and the value of the extra work, $12,658.50, had not been paid him, on the 19th of November, 1891, filed his lien for the whole amount, $56,017.50. With the lien, he filed a copy of his contract. The defendant, alleging that by the contract there was a covenant against liens by the principal contractor, took a rule to strike off the lien, which rule, without filing the reasons therefor, the court below, on 25th of March, 1893, made absolute. From that decree, the plaintiff appeals.

The only question is, whether, from a reasonable construction of the contract, there was a stipulation by Schmid that he would not himself file a lien. The material parts of the contract, in this particular, are as follows:

"It being expressly understood and agreed that the said building shall be built, finished and delivered to the owner free of all liens and incumbrances, or any claims whatever that may arise under any action of the said contractor, or his legal representatives under this contract. . . .

"And it is hereby mutually agreed between the parties hereto that the price of said materials, and of doing and putting

up said work, shall be the sum of $43,359, subject to additions and deductions on account of alterations, as hereinbefore provided, and that such price shall be paid by the owner to the contractor in installments as follows : . . . . Provided, that in each of the said cases the architects shall certify in writing that all the work, upon the performance of which the payment is to become due as aforesaid, has been done to their satisfaction ; and provided, further, that, before each payment, if required, the contractor shall produce a certificate from the clerk of the office where liens are filed and recorded, signed by such clerk, that the said building is free from all liens or claims chargeable to the said contractor ; and further, that if the said contractor fails to pay or satisfy all and every legal claim and demand as aforesaid against said building, for which, if established, the owner of the said building or land might be made liable, and which would be chargeable to the said contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify itself against such liens or claims until the same shall be effectually satisfied, discharged or canceled ; and if there is not sufficient due or coming to satisfy such claims or demands, the said contractor covenants to pay the same.    The said contractor shall, forthwith after the execution of this contract, furnish to the owner a list of all subcontractors employed or engaged by him in the performance of this work, and it is expressly covenanted and agreed that the above payments are only to be made provided the wages of all artisans and laborers, and all those employed by or furnishing materials to the said contractor on account of this contract, shall have been paid and satisfied.    Said contractor also agrees to pay subcontractors and parties furnishing materials on account of this contract pro rata on each estimate, and the said subcontractors shall first, if required by the architects, give a release of lien for all work done and materials supplied by them up to date of such payment."

Unless the first sentence here quoted, being the last in clause 8 of the agreement, be detached from all the others, and it be given a construction without reference to any of the other stipulations, the case is clearly with the appellant.    The manifest intention of the owner, from this and other parts of the·

agreement, was to exact from the contractor a clean record, free from any claims whatever from any one not directly a party to the original contract, before paying the principal contractor. Does the contractor stipulate by this first sentence quoted, he will file no lien for himself? As a final settlement of this kind of contention, we decided in Nice v. Walker, 153 Pa. 123, that: "To prevent the contractor or subcontractor from filing a lien against the building, there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and that the implied covenant should so clearly appear, that the mechanic or material man can understand it without consulting a lawyer as to its legal effect."

Here the contract gave the contractor a lien, and both parties must have so understood it; but he, by his subsequent action with artisans and material men, might give them, also, by contract, a foundation for debt on which they could file a lien; so, it is agreed that he shall deliver the building to the owner, "free of all liens and incumbrances, or any claim whatever that may arise under any action of the said contractor." It does not say from any right or debt accruing to him from the contract, but from debts incurred by his "action" in carrying out his contract. In the most favorable interpretation of this clause for the appellee, it is ambiguous; it is not an express covenant against a contractor's lien, nor does such covenant result from necessary implication. Under Nice v. Walker, supra, it must be one or the other. But that this stipulation was not intended by either party as a covenant against a lien by the contractor himself, is manifest from the extreme caution taken by the owner to otherwise protect itself from any and all claims of the principal contractor. The 11th and 12th clauses of the contract stipulate, that if he neglect at any time to employ skilled workmen, or provide proper material, the owner shall provide both, and deduct the cost from the contract price; that payment shall be made on fortnightly estimates of the architect in writing; that 20 per cent of the estimate shall be retained by the owner; that before each payment, if required, the contractor shall produce the official certificate of the proper officer, that no lien has been filed by which the owner can be held liable, and for which the contractor is chargeable; that if

any such lien be filed, and the amount payable to the contractor is not sufficient to satisfy it, the contractor covenants to pay the same ; that payments are to be made as stipulated by the owner, only in case all artisans and material men having claims against the building are fully paid and satisfied.   From a perusal of the whole agreement, it is the " action " of the contractor with those he is, in the 12th clause, expressly authorized to employ, that is intended to be guarded against by this stipulation.   The contractor is to be paid only 80 per cent of his fortnightly earnings for both work and material; he is not to be paid this if any liens are filed in the interval.   There was no possible peril to any one under this contract, except to the principal contractor ; the owner never could be in any danger of paying a single dollar twice, that is, once to the contractor, and again to the subcontractor and material men. Therefore, as it was wholly unnecessary to stipulate against a lien by the contractor, the owner did not do so, and did not so intend.

The question in Schroeder v. Galland, 134 Pa. 277, and the question discussed by the court, was not one of interpretation of the intent of the parties, but whether the principal contractor could, by his contract, covenant against liens on part of subcontractors and material men.   It is stated by Justice GREEN thus : " The controlling question in this case is, can the subcontractor file a lien for the work and materials done and furnished by him, notwithstanding the stipulations of the principal contractor ? "   It was decided that he could not.   That was a case by the subcontractor against the owner, and while the language of the agreement is assumed to be a covenant against liens, also, by the contractor himself, that was not the question before the court.   So in Evans v. Grogan, 153 Pa. 121, it was distinctly announced that what was decided in Schroeder v. Galland was, that if the principal contractor covenanted that liens should not be filed, or such covenant was necessarily to be implied, neither he nor the subcontractor could file one.

In Murphy v. Ellis, 153 Pa. 133, the contract was to deliver to the owner, " free and discharged of all claims, liens of mechanics and material men, and all charges whatsoever, one brick dwelling house, for which the party of the first part agrees to pay the sum of $6,220.50, and the last and final payment of

$2,920.50 to be made when the building is finished in every particular, and accepted as such by the owner and her architect, and when the said party of the second part satisfies the party of the first part by securing releases of all subcontractors and material men, that there are no outstanding claims against the building." This, on the authority of Nice v. Walker, was held not to be a covenant against liens.

In Smith v. Levick, 153 Pa. 522, in an opinion by Justice Mitchell, it was decided, that the stipulation of the contractor that he would furnish the owner with "a full, complete and perfect release of all liens which may lie against the building on account of work done or materials furnished thereto," was a recognition of the right to a lien, and that Nice v. Walker was intended to "finally settle the question involved."

The rule laid down in Schroeder v. Galland, that "the only ground upon which the contractor can bind the building, for either materials or labor, is by virtue of the authority delegated to him by the owner, and where no such authority is delegated, but on the contrary is expressly withheld and he covenants that no lien shall be filed against the building, he cannot file a lien himself, nor can his subcontractor do so," was expressly adhered to in Nice v. Walker; but the interpretation put upon the words of the agreement in Schroeder v. Galland was acknowledged to have been more favorable to the owner than was warranted; that they did not constitute an express covenant against liens, nor was such covenant a necessary implication.

As an application of the rule in Nice v. Walker to the language of the agreement in this case determines that there was no covenant against liens, the decree is reversed; the rule to strike off the lien is discharged; costs to be paid by appellee.