## CONRAD SCHROEDER v. A. M. GALLAND ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 26, 1890—Decided April 21, 1890.
[To be reported.]

1. Where the principal contractor for the erection of a building has stipulated that upon its completion the building shall be delivered to the owner, "free of all liens and encumbrances," a mechanics' lien cannot be filed by a sub-contractor, for work done or materials furnished by him toward the erection of the building.*

2. The only connection between the owner and the sub-contractor being through and by means of the contract between the owner and the principal contractor, the sub-contractor is chargeable with notice of all its terms and stipulations and is bound thereby; he cannot have the benefits of the builder's contract without accepting its conditions.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

No. 178 January Term 1890, Sup. Ct.; court below, No. 691 October Term 1886, C. P.

On September 17, 1887, Conrad Schroeder brought scire facias upon a mechanics' lien against Anna M. Galland, owner or reputed owner, and B. Galland, her husband, and Charles Olmsted, contractor and builder. The defendants pleaded nil debent, payment with leave, etc.

The issue joined was tried on December 9, 1887, when a verdict was rendered for the plaintiff in the sum of $1,655.03. A judgment entered thereon was afterwards reversed on writ of error, at No. 279 January Term 1888, Sup. Ct., with an award of a venire de novo: Galland v. Schroeder, 21 W. N. 103. At the second trial, on December 3, 1889, the following facts were shown:

Anna M. Galland being the owner of certain land in the city of Scranton, her husband, B. Galland, with her consent, entered into a written contract with Charles Olmsted for the

---

* See Benedict v. Hood, post 289.

erection of a residence thereon, for the consideration of $9,000. By the contract, which bore date August 12, 1884, and named B. Galland as party of the first part, and Charles Olmsted as party of the second part, Olmsted agreed that, on or before April 1, 1885, he would erect "and deliver over to the party of the first part, free of all liens and encumbrances, or any claims whatever that might arise under any action of the party of the second part, or his legal representatives, under this contract, a basement, two-story and steep roof residence," etc., and Galland agreed to pay therefor the sum of $9,000, "upon estimates made by the architect, to the amount of ninety per cent of the labor performed on and materials furnished for the said building, as the architect shall estimate them, and the residue of ten per cent, or the balance of the contract price or amount due, when the building has been completed in accordance with the drawings and specifications and this contract, and to the satisfaction of the architect, and delivered over to the party of the first part, as aforesaid."

The contract contained also the following stipulations:

"These payments, (on the estimates of the architect,) by the party of the first part, are to be made to the party of the second part, provided the wages of all artisans and laborers, and all those employed by or furnishing materials to the said party of the second part, on account of this contract, shall have been paid and satisfied; the party of the second part hereby agreeing to furnish such evidence of payment and satisfaction, if required so to do, by the party of the first part, prior to each payment; . . . . . In case the party of the second part fails to pay and satisfy all and every legal claim and demand, as aforesaid, against the building, the said party of the first part may, if he deems proper so to do, retain from the moneys due, if any, to the party of the second part, enough to satisfy such claims and demands, and if there be not enough due or coming, then the said second party covenants and agrees to pay the same. Said second party also agrees to pay subcontractors, and parties furnishing materials on account of this contract 'pro rata,' at each estimate." . . . . .

Olmsted the contractor, by a parol contract, sub-let a portion of the work to the plaintiff, who, after the completion of his sub-contract, filed the mechanics' lien claim upon which this

scire facias was issued, to secure a balance claimed by him to be due for work performed and materials furnished under the sub-contract.

A large amount of testimony was submitted by the plaintiff and the defendants respectively, upon the question whether anything remained due to the plaintiff as a sub-contractor, and respecting the character of the work done by him upon the building, the defendant alleging that he had been paid in full and that a portion of his work was defective. Testimony for the defendants tended to prove that Olmsted had not fully completed his contract, and that the Gallands had paid him in full for all work and materials contributed to the house by himself and Schroeder. B. Galland testified that $600 of the money, so paid, was paid after the plaintiff Schroeder had informed the witness that he had received payment from Olmsted of the full amount due upon the sub-contract. Another question upon which the testimony was conflicting was whether the lien had been filed in time.

At the close of the testimony, the court, SITTSER, P. J., 44th district, specially presiding, after instructing the jury respecting the disputed matters above referred to, answered points submitted by the defendants as follows:

On the part of the defendants we are asked to say to you:

1. That a contractor may contract with the owner of a lot of land to erect a building upon the same and to deliver it to the owner free of all liens and encumbrances that may arise under any action of his or her legal representatives under the contract, and having so contracted he cannot file a mechanics' lien.

Answer: This is not affirmed.[3]

2. The right to a mechanics' lien is founded by law on a contract to build, and a sub-contract is dependent upon the principal one, so that a sub-contractor's right to file a mechanics' lien is limited by the terms of the contract between the builder and the owner.

Answer: This is true, to a certain extent, as to the time and mode of payment, but they cannot, by their contract, deprive the sub-contractor of a right to a lien.[4]

3. If the jury believe from the evidence that Conrad Schroe-

der sub-contracted with Olmsted to furnish a part of the material, to perform a part of the work and labor in the erection and building of Mrs. Galland's house, and that Olmsted had contracted with Mrs. Galland to build the house at a price agreed upon between them, and to deliver it over to her free of all liens and encumbrances, or any claims whatever, that might arise under any action of his or her legal representatives under the contract, Schroeder cannot file a mechanics' lien against Mrs. Galland's house for the work and labor done and materials furnished under his contract with Olmsted.

Answer: This is not affirmed. If an owner making a contract with another to erect a house, provides in his contract that no mechanics' liens shall be filed against it, that is binding upon the person with whom the contract is made, but is not binding upon a sub-contractor. Parties to the contract may lay down the law between themselves; they cannot repeal the mechanics' lien law as to a sub-contractor.[5]

8. Under all the law and evidence in this case, the verdict must be for the defendants.

Answer: This point is not affirmed.[6]

The jury rendered a verdict in favor of the plaintiff for $1,831.90. A rule for a new trial having been discharged, judgment was entered on the verdict. Thereupon, the defendants took this appeal assigning for error:

3–6. The answers to defendant's points.[3 to 6]

*Mr. S. B. Price* and *Mr. Lemuel Amerman*, for the appellants:

If a contractor agree that no liens shall be filed against a building which he is to erect, this stipulation will be enforced and he will be prevented thereby from filing a lien: Long v. Caffrey, 93 Pa. 526; Scheid v. Rapp, 121 Pa. 593. Whether the act of April 16, 1845, P. L. 538, first gave liens to subcontractors, or whether they were provided for by the act of March 17, 1806, 4 Sm. L. 300, is a question upon which the text writers are in conflict: Sergeant's Mech. Lien Law, 69, 70, 124; Johnson's Mech. Lien Law, 175. Neither act confers the right to a lien upon sub-contractors, eo nomine. The claim of the sub-contractor rests upon the contract made with the chief contractor, and his rights are limited by its terms:

Arguments.

Campbell v. Scaife, 1 Phila. 187; Given v. Bethlehem Church, 11 W. N. 371; Henley v. Wadsworth, 38 Cal. 356; Shaver v. Murdoch, 36 Cal. 298; Harlan v. Rand, 27 Pa. 511. If there ever was any question as to this, it is settled by Brown v. Cowan, 110 Pa. 588. As to the distinction between contractors, or sub-contractors, and material-men, see: Sergeant's Mech. Lien Law, 69; Witman v. Walker, 9 W. & S. 187; Jones v. Shawhan, 4 W. & S. 257; Hoatz v. Patterson, 5 W. & S. 537; Johnson's Mech. Lien Law, 175.

*Mr. Everett Warren* (with him *Mr. Edward N. Willard*), for the appellee:

1. The land upon which the building is located is the separate property of Anna M. Galland, and the house was built for her. But she is not a party to the contract with Olmsted; it does not refer to her, directly or indirectly, and no recovery could be had, for or against her, for any breach of the covenants contained in it. Supposing that it were between her and Olmsted, are the covenants such as to defeat the plaintiff's lien? Notwithstanding the clause authorizing the owner to retain sufficient money to satisfy all legal claims and in express terms recognizing the rights of the sub-contractors, she proceeded to pay Olmsted thousands of dollars, without regard to his failure to perform his plain contract duty to the plaintiff. This court has not yet decided that the right of the sub-contractor to file a lien can be taken away by the agreement of the principal contractor, and when it does so decide, some other contract than the one now invoked will be the basis of the decision.

2. The defendant's second point was an abstract proposition. It was correctly answered; but, right or wrong, the answer was in our view of the case immaterial. The defendant's third point embraced a portion of the agreement only, and therefore the defendants were not entitled to an answer to it. For this reason alone it was properly negatived. From the passage of the act of March 17, 1806, 4 Sm. L. 300, to the present time, sub-contractors and material-men have had their liens for work and materials. The reason for granting the right was that they had no reliance except the honor and honesty of the contractor, and frequently suffered losses for want of better protection: Bolton v. Jones, 5 Pa. 145. If his statutory right

may be abrogated by an understanding between the owner and contractor, to which he is not a party and of which he has no notice, then the law enacted for the protection of the sub-contractor is a dead letter and his condition is no better than before its passage. The reasons assigned for the decision in Campbell v. Scaife, 1 Phila. 187, are disposed of and shown to be unsound by the following cases: Harlan v. Rand, 27 Pa. 511; Dickinson College v. Church, 1 W. & S. 466; Boyd v. Mole, 9 Phila. 118.

3. The argument that the owner is without protection is fallacious. He knows the statutory rights of the sub-contractor, and, with his hand upon his own purse strings, it is not even inconvenient for him thoroughly to protect himself before parting with one dollar. The owner, by the employment of the contractor, and by the force of the statute, makes the contractor his agent to bind the building to the sub-contractor. A principal is bound by the contract of his agent, notwithstanding a secret limitation of the latter's authority, of which the person dealing with him had no notice: Chouteaux v. Leech, 18 Pa. 224; Loudon S. Fund Soc. v. Sav. Bank, 36 Pa. 498. By the act of April 3, 1872, P. L. 857, the legislature recognized our position, and it is sustained by Odd Fellows' Hall v. Masser, 24 Pa. 510, holding that a material-man is not bound to inquire into the character of the materials which the contractor has agreed with the owner of the building to use in its construction. Notice to look to the contractor alone for payment, will not deprive the material-man of a lien: Hall v. Parker, 94 Pa. 109. An agreement by the contractor not to make the building liable to liens of others is res inter alios acta, and does not estop the sub-contractor: Cattanach v. Ingersoll, 1 Phila. 286; Trickett on Liens, 29.

OPINION, MR. JUSTICE GREEN:

The plaintiff, Schroeder, was a sub-contractor under the principal contractor, Olmsted, for the execution of a part of the work of the construction of a house for the defendant Galland. In the contract between the owner and the principal contractor it was expressly stipulated that the building should be built, finished, and delivered over to the owner, " free of all liens and encumbrances, or any claims whatever, that might arise under

any action of the party of the second part, or his legal repre-
sentatives, under this contract." And, again, it is provided
that the payments were to be made to the party of the second
part, " provided the wages of all artisans and laborers, and all
those employed by or furnishing materials to the said party of
the second part, on account of this contract, shall have been
paid and satisfied ; " and, further, " in case the party of the sec-
ond part fails to pay and satisfy all and every legal claim and
demand, as aforesaid, against the building, the said party of
the first part may, if he deems proper so to do, retain from the
moneys due, if any, to the party of the second part, enough to
satisfy such claims and demands, and if there be not enough
due or coming, then the said second party covenants and
agrees to pay the same. Said second party also agrees to pay
sub-contractors, and parties furnishing materials on account of
this contract, pro rata, at each estimate." The owner seems
to have guarded himself, as well as it was possible to do, by
these provisions, against liens, claims, demands, and liabilities of
and to any and all other persons than the principal contractor.
The stipulation against liens is undoubtedly obligatory upon
the principal contractor, and so far as he is concerned no lien
could be filed : Long v. Caffrey, 93 Pa. 526 ; Scheid v. Rapp,
121 Pa. 593.

The controlling question of this case is, can the sub-con-
tractor file a lien for the work and materials done and furnish-
ed by him, notwithstanding the stipulations of the principal
contract? If he can, the owner, instead of paying $9,000 for
the completed house, according to the contract, will be obliged
to pay therefor nearly $11,000.

The plaintiff filed his lien as a sub-contractor under Olm-
sted, whom he described as contractor, and with whom he
contracted. He says in his claim of lien : " The name of the
person with whom Conrad Schroeder contracted is named
Charles Olmsted." He also states that the name of the own-
er is Anna M. Galland, the wife of B. Galland. He therefore
knew that he was dealing and contracting, not with the own-
er, but with one who was a contractor for the construction of
the building. The only connection between the owner and
this sub-contractor was through and by means of the written
contract between the owner and the principal contractor. He

Opinion of the Court.

could not, in such circumstances, contract with this person without being charged with notice of the contract of the latter with the owner, and, by necessary consequence, with notice of all its terms and stipulations.

A sub-contractor for construction is certainly bound to know the kind of building that is to be erected, the materials of which it is to be built, the price to be paid for it, and the manner and times of payment. He cannot, under a contract for the erection of a building at a cost of $1,000, furnish work and materials to the amount of $5,000. He cannot furnish wood as material for the erection of a building to be built of marble or stone or bricks. Nor can he furnish unsuitable materials, even of a kind demanded by the contract, and entitle himself to a lien therefor.

In the case of Harlan v. Rand, 27 Pa. 511, we decided that to entitle a material-man, who deals with the contractor, to have his lien, he must furnish materials suitable for the building and apparently adapted to it. There the contractor made a contract with a sub-contractor to furnish a heater of a new construction to heat the building. The sub-contractor employed the plaintiff, who claimed a lien, to do the work. The contract with the sub-contractor stipulated that if the heater did not answer the purpose of heating the building, it was to be removed at his expense. The claimant, who did the work, filed a lien for it, and this court held he was bound by the provisions of the contract with his employer, the sub-contractor, though he was no party to it, and rejected his lien. LOWRIE, J., in delivering the opinion, said: " There are several cases that show that the material-man cannot justly charge the building for all the materials that he may choose to furnish on its credit, without reference to the quantity or quality needed. He must, in his supplies, regard the size and apparent character of the building, and his lien cannot go beyond what these show to be reasonable: Odd Fellows' Hall v. Masser, 24 Pa. 510. . . . . And no one would think of saying that a material-man shall have a lien for materials furnished for a particular purpose, and which are unfit for it. . . . . If they are furnished on the order of the owner of the house, of course this rule does not apply, for a man may pledge his own property for any kind of materials. But it is involved in the very fact of furnishing

them to a contractor of the building, on its credit, that he should know its character, and that they must, at least apparently, be adapted to it." On another branch of the case the same judge said: "When the owner employs a house builder to erect a house for him, the parties are directly connected by contract, and the lien must be founded on it." The same thought is expressed and enforced in the recent case of Brown v. Cowan, 110 Pa. 588. We there say: "It is the plain and obvious duty of one who deals with an alleged contractor to know the relation which he bears to the owner. Failing in this, he furnishes labor or materials at his peril."

Of course, it cannot be questioned for a moment that a subcontractor who undertakes the construction, in whole or in part, of a building, under a contract with the principal contractor, is absolutely bound by all the plans and specifications expressed in the original contract of the owner with the builder. He must conform to the original contract in all matters, and in the minutest detail, precisely as the builder would be obliged to do. It is most obvious that he cannot depart in any respect, either from the designs, the dimensions, the materials, the plans, shapes, and sizes, that are expressed in the original contract; and the reason is most manifest. He is the representative of the builder. He undertakes to perform the contract of the latter with the owner, either in whole or in part, and of course he must conform to that contract in every particular. It would be of no use for him to say that he did not know the particulars of that contract; he is bound to know them: it is a legal necessity arising from the fact that he has undertaken to do the work which his principal has engaged to do. He certainly cannot furnish pine wood for interior woodwork, when the owner's contract with the builder calls for walnut, or cherry, or ash. He cannot furnish stone when the contract requires marble, or bricks when stone is designated, or one kind of stone when another kind is expressed, or wood instead of bricks. He cannot furnish a building of two stories when three are demanded by the contract, or of six rooms when ten are required. These conclusions are readily appreciated, and will be at once conceded. But to go further and into greater detail it must be equally plain that one who, as a subcontractor, agrees with the principal contractor to furnish ma-

terials only, for the building, is just as precisely bound as his principal by the stipulations of the original contract. If that contract requires the mantels to be of marble, he must make them of marble, and he not only could not acquire a right to a lien if he made them of slate or of wood, but he would not be entitled to any payment whatever from the owner for his work. And vice versa, if they were required to be of wood, he could not make them of marble or of slate. And so, if a carpenter should take a sub-contract for the wood-work, he could not furnish hemlock flooring when the owner's contract required pine or ash, or doors made of pine when doors of walnut were specified. And so of painters and glaziers and plasterers, who take sub-contracts for the execution of their several specialties; they are all bound by the owner's contract with the builder precisely as the builder himself is bound. They cannot be permitted to be ignorant of his limitations, or to plead such ignorance as an excuse for insufficient performance. And the reason for it all is most manifest. They are bound to do just what their principal was bound to do, because they assumed to perform his contract with the owner, to the extent of their undertaking, and, of course, they must perform according to his express limitations. In other words, they necessarily have notice of the terms and stipulations of his contract with the owner, and that means, not a part, but all of those terms and stipulations. Upon the plainest legal principles applicable in all other cases, they cannot have the benefits of the builder's contract without accepting the conditions upon which those benefits are conferred. If they could, they would defeat the explicit contract of the owner upon a point without which, it may easily be, he would never have consented to it. If the law would tolerate this method of dealing with building contracts, it would only be necessary for the original contractor to sub-let his contract by portions, to different persons, and the prohibition against liens would be utterly destroyed, and a contract would be enforced against the owner to which he never consented.

There is no hardship to sub-contractors in enforcing a provision prohibiting liens, against them, because they are bound to know, by necessity, all the terms of the contract made by their principal in any event, and they therefore know of the prohibition.

Opinion of the Court.

But the owner has no opportunity of protecting himself, because he cannot know to what persons the contract, or portions of it, may be sub-let. He has done all he could do by prohibiting liens, in plain terms, in his written contract; and of that prohibition all sub-contractors are bound to know, and may abstain from contracting on such terms if they choose. We know of no good reason for giving such an extraordinary privilege to sub-contractors, as the right to repudiate one of the most important terms to which their contracts are subject, or of taking away from an owner the right to insist upon the performance of his contract according to its literal terms. We take away houses and lands from their owners by means of some secret lien or trust of which they know nothing, by applying the doctrine of constructive notice; and it would be passing strange for us to hold that the right of a sub-contractor for part of a building is of so sacred a character that it shall not be bound by the express limitations of a written contract, under which and by force of which his own contract must be performed. His right of lien has no existence at common law or in equity. It is a creature of statute alone; but the statute confers upon him no special prerogative to transcend the most familiar principles of the law, and to claim privileges which are denied to all other citizens in the determination of their contract rights. Let it be granted that a contractor, as well as the owner, has power to bind the building by a lien for work and materials; we have never yet held that he may confer that right upon a mere sub-contractor under him when, by the terms of his own contract, he does not possess the right himself. The question is one of first impression. Heretofore it has never been before us. It is with us now, and we are at liberty to decide it in accordance with our views of right and justice and with those principles of the interpretation and administration of contracts between citizens which we unfailingly apply in all other cases.

In an old case, decided many years ago by the district court of Allegheny county, Campbell v. Scaife, 1 Phila. 187, the same conclusion we have reached was expressed and applied. The decision is of no binding authority upon this court, but the reasoning of the opinion is of such clearness and force that some of it may well be repeated here. The learned court says:

Opinion of the Court.

" The owner contracts with the builder to erect a house on certain terms, and the builder makes a sub-contract with a material-man to supply the materials. The claim of relationship consists of but two links, the second of which hangs by the first, and will bear no greater weight. The sub-contractor comes in by reason of his direct contract relation to the builder, and the right of lien of the former for his claim is, pro tanto, substitutionary to that of the latter. As against the owner the terms of the original contract, and as against the builder the terms of the sub-contract, limit and qualify the lien of the sub-contractor, so as to prevent his claim from abating the terms of either contract. . . . . The allowance of any lien at all to a sub-contractor is a special privilege granted only in case of buildings; and it is not unreasonable to require him to look to the principal contract to ascertain whether it is such as to justify him in becoming a contractor under it. The argument that the law and the principal contract make the builder the agent of the owner proves nothing. Suppose the fact to be so, still his agency is only special, limited by the terms of the contract. He is to employ men to build the house in the manner and on the terms there indicated. For anything beyond that, he exceeds his authority and does not bind his principal." In the case of Dickinson College v. Church, 1 W. & S. 462, Mr. Justice ROGERS, in delivering the opinion of this court, said : " It is a great mistake which cannot be too soon corrected, if any suppose that when a person undertakes to furnish lumber to a contractor on the credit of a building, that he is relieved from inquiring into the nature of the building he trusts, whether it is brick or frame, whether it is a one- or three-story house, or whether it is large or small; that, in short, he can furnish materials enough to complete a three-story house of the largest dimensions, when the materials are intended for a house of the most inferior description. The very fact that he credits the building, and does not depend altogether on the personal responsibility of the contractor, should, it would seem, immediately suggest the propriety of making the necessary inquiries as to the size, materials, and nature of the intended erection." In the state of California it has been held by their court of last resort, in two cases, that the right of the sub-contractor to a lien is controlled by the terms of the original

contract, and he is presumed to have notice of the terms of that contract: Shaver v. Murdock, 36 Cal. 298; Henley v. Wadsworth, 38 Cal. 356. Entertaining these views, we sustain the third, fourth, fifth, and sixth assignments of error.

Judgment reversed.