## Waters, Appellant, v. Wolf, Exrx., et al.

[Marked to be reported.]

*Mechanics' liens—Contract—Covenant not to file liens.*

A subcontractor cannot file a mechanic's lien where the written contract of the principal contractor with the owner contains the following stipulation: "The contractor agrees that no liens shall be filed against said works, or on account of the said contractor, neither shall there be any legal or lawful claims against the contractor in any manner from any source whatever, for work or materials furnished on said works."

*Mechanics' liens—Contracts—Rights of property—Public policy—Constitutional law—Act of June 8, 1891.*

The first section of the act of June 8, 1891, P. L. 225, which requires the written consent of the subcontractor in order to bind him by a stipulation in the contract between the original contractor and owner, that no mechanics' liens shall be filed, is unconstitutional in that it attempts to create a debt and give a lien therefor, against the express covenant in the contract; and the second section of the act, providing that the contractor shall be the agent of the owner in ordering work or materials, and that any subcontractor doing work or furnishing materials shall be entitled to a lien, notwithstanding any stipulations to the contrary in the contract between the owner and the contractor, unless such stipulation shall be consented to by said subcontractor, is unconstitutional in that it attempts to frame a new contract and substitute it for the one made by the parties.

The indefeasible right to acquire and possess property, secured by article 1, section 1 of the constitution of Pennsylvania, necessarily includes the right to make reasonable contracts for the improvement of property; and a contract that no mechanics' liens shall be filed is not unreasonable as to either contractor or subcontractor.

Such interference with the indefeasible rights of freedom of contract in the acquisition and protection of property as is attempted by the 2d section of the above act, the people have plainly reserved from legislative power.

Whatever reasonable regulations the legislature might make as to notice to subcontractors and material men of the terms of the contract be-

tween the owner and the only one with whom he bargains, the principal contractor, such as that it shall be in writing and shall be recorded, would be clearly within legislative power. By MR. JUSTICE DEAN.

MR. JUSTICE MITCHELL dissents.

Argued Nov. 8, 1893.   Appeal, No. 278, Oct. T., 1893, by plaintiff, John W. Waters, from order of C. P. No. 3, Allegheny Co., Nov. T., 1892, No. 169, discharging rule for judgment for want of sufficient affidavit of defence against defendants, Anna Wolf, executrix of Nicholas Wolf, owner, and Thomas White, contractor.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ. Affirmed.

Rule for judgment for want of sufficient affidavit of defence on sci. fa. sur mechanic's lien entered by subcontractor.

The affidavit of defence alleged that the building was erected under contracts made between the owner and contractor, which contained stipulations providing that " Before the payments are made all releases on the parts of work finished shall have been signed by the contractors furnishing material and labor on said building.   The contractor agrees that no liens shall be filed against said works, or on account of the said contractor ; neither shall there be any legal or lawful claims against the contractor, in any manner, from any source whatever, for work or materials furnished on said works."

A subsequent clause in the contract was, in part, as follows : " The proprietor will not, in any manner, be answerable or accountable for any loss or damage that shall or may happen to the said works, or any part or parts thereof respectively, or for any of the materials or other things used and employed in finishing and completing said works."

Rule for judgment discharged.   Plaintiff appealed.

*Error assigned* was order refusing judgment, quoting it.

*Thomas Patterson, William A. Way* with him, for appellant.— The act of June 8, 1891, P. L. 225, only requires the contract to be in writing.   It does not affect the contract, but only requires certain evidence of its existence.

The act does not impair the obligation of contracts, as it only

applies to contracts made after its passage : Sturges v. Crowninshield, 4 Wheat. 122 ; McMillan v. McNeill, Id. 209 ; Ogden v. Saunders, 12 Wheat. 213 ; Boyle v. Zacharie, 6 Pet. 348, 635 ; Watson v. Mercer, 8 Pet. 88 ; Beers v. Haughton, 9 Pet. 359 ; Suydam v. Broadnax, 14 Pet. 67 ; Planters' Bank v. Sharp, 6 How. 328 ; Baldwin v. Hale, 1 Wal. 223 ; 2 Kent's Com. *392 ; McCracken v. Hayward, 2 How. 612.

The act does not extend or construe the terms of any existing act. It is aimed at the rule announced in Schroeder v. Galland, 134 Pa. 277. It simply declares a new rule to take the place of the one announced by that decision : Felts's Ap., 1 Mona. 282 ; Sankey v. Hawley, 118 Pa. 30. It does not attempt to invade the province of construction, as did the act of June 17, 1887 : Titusville Iron Works v. Keystone Oil Co., 122 Pa. 627.

The provisions of the contract are not sufficient to prevent the filing of liens : Cresswell Iron Works v. O'Brien, 156 Pa. 172 ; Loyd v. Krause, 147 Pa. 402 ; Nice v. Walker, 153 Pa. 123 ; Smith v. Levick, 153 Pa. 522.

*Frank P. Iams, Cyrus C. Brock* with him, for appellees.— The act of June 8, 1891, considered as an attempt to amend the acts of 1836 and 1845, violates art. 3, § 6, of the constitution of Pennsylvania.

The plaintiff must accept the whole or none of the contract : Share v. Anderson, 7 S. & R. 43.

The act is void because it is an invasion of the province of the judiciary in that it provides that a contract shall be construed contrary to its own inherent terms, if certain things are not done at its execution : Art. 5, § 1, Const. ; Titusville Iron Works v. Keystone Oil Co., 122 Pa. 633.

The act violates art. 1, § 1, of the constitution : Faas v. Warner, 96 Pa. 217 ; Plank Road Co. v. Davidson, 39 Pa. 440 ; Sharpless v. Mayor, 21 Pa. 165 ; Harlan v. Rand, 27 Pa. 511 ; Edward's Ap., 108 Pa. 290 ; Godcharles v. Wigeman, 113 Pa. 437 ; R. R. v. Baty, 6 Neb. 37 ; Lumber Co. v. Savings Bank, 77 Mich. 199 ; McMasters v. Normal School, 2 Dist. R. 759 [affirmed ; reported below].

The contract excluded all liens : Nice v. Walker, 153 Pa. 123 ; Benedict v. Hood, 134 Pa. 289.

OPINION BY MR. JUSTICE DEAN, July 11, 1894:

The plaintiff filed a mechanic's lien as subcontractor for work done and materials furnished in the erection of a four story brick hotel for Nicholas Wolf in McKeesport, Allegheny county. Wolf, the owner, made his contract for the work and materials in the construction of the building with Thomas White, a contractor and builder. The contracts with White were two, one dated June 15, 1891, and the other November 7th of the same year. Both contracts contained this stipulation : " The contractor agrees that no liens shall be filed against said works, or on account of the said contractor, neither shall there be any legal or lawful claims against the contractor in any manner from any source whatever, for work or materials furnished on said works."

During the progress of the work White made an agreement with Waters, the plaintiff, as subcontractor, for work and materials on the building. Waters made no agreement with White with reference to filing a lien, nor did he consent in writing to be bound by the stipulations of White's contract with the owner. He filed this lien for a balance of $413 due him, on which sci. fa. issued, and Wolf, the owner, filed affidavits of defence, averring that, by his contract with the principal contractor, no lien could be enforced. Plaintiff then took a rule for judgment for want of a sufficient affidavit of defence, which rule, after argument, on May 3, 1893, the court discharged without filing opinion. From that decree plaintiff took this appeal, assigning for error the decree discharging the rule.

If the decisions of this court touching the rights of the owner, in a long line of cases preceding and following Schroeder v. Galland, 134 Pa. 277, of which that opinion is only a concise summary, be the law, this appeal cannot be sustained. But it is argued, the rule laid down in that and like cases is swept away by the act of June 8, 1891, passed subsequently, with the intention of rendering that rule inoperative as to all cases arising after the passage of the act. And this result is conceded by the appellee, if effect be given that act according to its terms.

The act referred to contains two sections, as follows :

" 1. No contract which shall hereafter be made for the erection of the whole, or any part of a new building, with the owner of the lot upon which the same shall be erected, shall

operate to interfere with or to defeat the right of a subcontractor, who shall do work or shall furnish materials under the agreement of the original contractor in aid of such erection, to file a mechanic's lien for the amount which shall be due for the value of such work or materials furnished, unless such subcontractor shall have consented in writing to be bound by the provisions of such contract with the owner, in regard to the filing of liens. Without such written consent of the subcontractor, all contracts between the original contractor and the owner, which shall expressly or impliedly stipulate that no such lien shall be filed, shall be invalid as against the right of such subcontractor to file the same.

" 2. All persons contracting with the owner of ground for the erection or construction   of the whole or of any part of a new building thereon, shall be deemed the agent of such owner in ordering work or materials in and about such erection or construction, and any subcontractor doing such work or furnishing such materials, shall be entitled to file a mechanic's lien for the value thereof within six months from the time the said work was completed by said subcontractor, notwithstanding any stipulations to the contrary in the contract between the owner and the contractor, unless such stipulations shall have been consented to in writing by such subcontractor."

The constitutionality of this act is denied by the appellee, and, as a consequence, the decision in Schroeder v. Galland, it is alleged, is not abrogated by it.

The first statute on this subject, that of 1803, gave a lien to mechanics and material men against the building for debts contracted by the owner. The intervention of a contractor or builder, who might subcontract with mechanics and material men, was not recognized by that act. Then came the act of March 17, 1806, which, like the act of 1803, applied only to the county of Philadelphia, but which, by the act of 1808, was extended to the boroughs of Lancaster, Pittsburg and Erie, and by subsequent acts still further extended. This act provides that every dwelling house or other building, thereafter constructed, should be subject to the payment of debts contracted for or by reason of any work done or materials furnished in the erection or construction of any house or other building, before any other lien which originated subsequent to the commence-

ment of the work.· And by the same act, the act of 1803, which applied only to Philadelphia, Southwark and Northern Liberties, was repealed. In Steinmetz v. Boudinot, 3 S. & R. 541, the materials were furnished before the act of 1806, and it was decided, that as the contract for furnishing material was not made with the owner of the legal title, but with one who had contracted to purchase on a ground rent, a lien could not be sustained under the act of 1803 ; but it was stated by TILGH-MAN, C. J., who delivered the opinion, that the act of 1806 was passed to relieve against such hardship, by giving a lien to the mechanic or material man, whether the work was done or material furnished on the credit of the owner or not. This last statement was outside of the question decided. Whether the legislature could confer such remedy on one no party to the contract, was not before the court. But then, under the act of 1806, it was held, in Savoy v. Jones, 2 Rawle, 343, that the estate of the remainder-man was subject to sale on a lien filed by a material man, under a contract with the owner of the life estate, even though the sale was made after the death of the life tenant. In this case the opinion is by GIBSON, C. J., who says :

" The object of the legislature was to enable the mechanic or material man to follow his labor or material into the building, which is pledged for the price, without regard to the estate of the owner. Did the lien proceed from a contract with the owner, the argument. drawn from the apparent injustice of permitting a tenant for life to affect the estate of the remainder-man, who was not a party, would not be destitute of plausibility. But there is no real injustice in the matter, the owners of the several parts of the fee being proportionately benefited ; and it is consequently just that the whole should bear the burden."

The only question for decision was, whether the contract of the owner of the life estate, which was for the benefit of both estates, could create a lien or burden on both. It was decided that the lien bound the whole estate. There was here a contract of the owner of an estate in the land on which the building was erected, and at the date of the contract, the owner, the life tenant, of this estate, was in the actual possession ; the remainder-man had no part in the contract, yet his estate was held bound. To the same effect are Bickel v. James, 7 Watts,

9; Anshutz v. McClelland, 5 Watts, 492; Holdship v. Abercrombie, 9 Watts, 52, and other cases. It is said by KENNEDY, J., in Holdship v. Abercrombie, that, as the act of 1803 provided a lien for work and materials in the erection of a building, only when contracted for by the owner thereof, and the act of 1806, which expressly repealed that of 1803, omitted the words "contracted by the owners thereof," and enacted that every building thereafter constructed should be subject to liens for work and materials, it was the manifest intent of the legislature to give a lien for work and materials, whether upon contracts made with the owner or with the contractor for the erection of the building. But in no one of the many cases decided under the act of 1806, was the question ever raised as to whether the owner could protect himself from liability by a contract prohibiting liens. In the absence of an express contract against liens, with a statute before him giving a lien to those with whom his contractor contracted, the consent of the owner that a remedy given by law should be enforced under the contract to build was certainly to be implied.

Then came the act of 1836, which did what none of the previous ones had done, provided a complete mode of procedure for the enforcement of the lien, yet it did not define, with much more certainty than the others, the rights of the owner and the lien creditor. It declared that: "Every building within the several counties of this commonwealth . . . . shall be subject to a lien for the payment of all debts contracted for work done or materials furnished for or about the erection or construction of the same. The lien of such debt shall extend to the ground covered by such building, and to so much other ground immediately adjacent thereto and belonging in like manner to the owner of such building, as may be necessary for the ordinary and useful purposes of such building."

By the language of this act, as by that of 1806, to create a lien against the land of the owner, the debt must be founded on a contract for work or material for the building. The act recognizes that, by contract, debts for work and material will be created, and then provides a statutory lien therefor. The act of 1806 had enacted that the building should "be subject to the payment of debts contracted for or by reason of any work done in the erecting and constructing" of the same be-

fore any other lien which originated subsequent to the commencement of the building. The act of 1836 declares that the building "shall be subject to a lien for the payment of all debts contracted for work done or materials furnished." There is, in this particular, but slight difference in the two acts. Savoy v. Jones, supra, decided that, under the act of 1806, the estate of the remainder-man was bound by the lien, as well as that of the tenant for life, who had made the contract. Holdship v. Abercrombie, 9 Watts, 52, that the contract of a tenant for years bound the land of the owner on which the building was erected. Bickel v. James, 7 Watts, 9, that the purchaser at sheriff's sale, under a mechanic's lien of the equitable title of a vendee in possession, who had contracted to build, was entitled to the possession in an ejectment as against the holder of the legal title whose purchase money was unpaid. In Evans v. Montgomery, 4 W. & S. 218, it was said, the court never had decided that the same interpretation should be put upon the act of 1836 as upon that of 1806 ; still, as this interpretation was fairly applicable to that of 1836, the act of 28th of April, 1840, was passed to relieve against the palpable injustice worked by such construction. This act declares that a mechanic's lien "shall not be construed to extend to any other or greater estate in the ground on which any building may be erected, than that of the person in possession at the time of commencing said building, and at whose instance the same is erected."

It is not worth while to criticize the form of expression in this act; the intent is beyond doubt, that is, to restrict the right and remedy to the estate of him who makes the contract. If the courts had given a construction to the former acts destructive of the rights of the owner, the legislature, when the wrong became manifest, righted it by an explicit enactment. The first case under the act was Bruner v. Sheik, 9 W. & S. 119. In this case, a warehouse insured by Sheik in the Lancaster Insurance Company had been burned ; the policy provided that the Insurance Company could, at their election, pay the value of the property, or rebuild it; they elected to rebuild, and made a contract with one Cooper for the entire structure. Bruner, on a contract with Cooper, furnished the lumber and other materials for the new structure, and filed a lien against the build-

ing.   It was held, there could be no recovery, because his contract was with the agent of the Insurance Company, and that the owner had no connection with the contract out of which the debt arose.   The opinion is by GIBSON, C. J., who says : " The affair was a transaction of the Insurance Company, and not of the owner, who was a stranger to the matter, and not to be affected by it."   The owner, in one sense, had a connection by contract with rebuilding, but it was a contract of indemnity against loss by fire, and under this contract he had discharged fully, by the payment of premiums, his obligation ; all that remained of performance devolved on the other party to the contract ; with this party alone had the claimant in the lien any connection by contract, although his debt was contracted for material to be furnished to a building erected on land of the owner with consent of the owner.   We cite this case, because it is the first under the act of 1840 and it decides that, to sustain a lien against the building, there must be a building contract connection between the claimant in the lien and the owner.   It was not enough to show a debt for material furnished to a building by contract with one not in possession, and the erection of the building with the knowledge of and by the consent of the owner.

The next legislation was the act of 16th of April, 1845, which declared that the act of 1836 should be construed to extend to and embrace claims for labor done and material furnished in the erection of any house or other building in pursuance of any contract or agreement, and no claim that had been filed, or which might be filed, should be affected by any contract, but the same should be held as valid as if there had been no contract.   The claim was soon made that the letter of this act embraced every form of debt incurred with or without a contract connecting the owner with the debt, and that every one who had done a stroke of work upon a building was entitled to a lien.   But in Jobsen v. Boden, 8 Pa. 463, a lien filed by a journeyman carpenter, it was decided that it was not intended to enlarge the scope of the act of 1836, further than to bring within its provision special contractors who had been declared not entitled to liens under that act ; that, with this enlargement, the owner was subject to a double lien, one by the con-

tractor and one by the master workmen employed by the contractor, but his liability extended no farther.

· The next decision of importance is that of Harlan v. Rand, 27 Pa. 511, which holds that no one has power to bind the building for work done or material furnished, except the owner or contractor under him. Harlan, the owner, contracted with Singerly to erect the building ; Singerly contracted with Leeds to put in a heater; Leeds contracted with Rand to furnish the pipes, dampers, and other portions of the heater. Rand filed his lien against the building, with notice to Harlan, owner, and Leeds, contractor. The Court says :

" The claims of workmen and material men do not become liens on a house from the mere fact that the work was done or material furnished for its erection, for they must be founded on a contract, express or implied, direct or indirect, with the owner of the building. . . . When the owner employs a house-builder to erect a house for him, the parties are directly connected by contract, and the lien must be founded on it. ,. . . The law implies that the contractor for the whole work may get materials and contract with special artisans required for the different parts of the work, on the credit of the building. . . . . It requires for claimants of liens to have regard, not merely to their own interest, but to that of the owner, in making their contracts with third persons, and to exercise the caution required of all other persons, of seeing that the person contracting with them has authority to bind another person's property for the work or materials which are wanted of them."

It is said, in the course of the decision, that, while the law implies that the principal contractor may contract for material and work and bind the owner to subcontractors, yet this is not a conclusive implication, and Bruner v. Sheik, supra, is cited as a case where, from the very nature of the contract, there was no such implication.

· Harlan v. Rand lays down three propositions, which have been adhered to since by this court, viz.: (1) The debt which is the subject of the lien must be founded on a contract, express or implied, with the owner. (2) When the owner employs a contractor to erect for him a house, a debt founded on a contract of the contractor with a subcontractor or material man is by implication authorized by the contract of the owner, and there-

fore is the subject of a lien.    (3) It is incumbent on such sub-contractor or material man to ascertain whether one assuming to be the principal contractor has authority to bind by lien the property of the owner.

The principal contractor is not designated by the term agent in the opinion, but when his relations to the owner, the building and subcontractor, are spoken of, and the extent of his power defined, the term is as applicable to him, as if he had been specially appointed on a salary by the owner to put up the building.    To say the power conferred by the contract on the builder or contractor is not an agency within the strict legal definition of the term, is not controlling; for want of a better designation it indicates with sufficient clearness the fact, that is, that the owner, with the law before him, has empowered another to contract debts for work and material, which may be made a lien on his property.

So, in Singerly v. Doerr, 62 Pa. 9, following Harlan v. Rand, it was decided that it is "the contract for the erection which communicates the owner's power to bind the building." And in Duff v. Hoffman, 63 Pa. 191, it was held that, when the act of 1845 gave the principal contractor a lien, he became, under his contract, as fully the agent of the owner as the mere architect or builder, and debts, under contracts made by him for work and materials, could be entered as liens against the owner; but that one who furnished lumber to a lumber dealer who had contracted with the owner, was not a contractor within the law, that his contract to furnish lumber warranted no implication of authority to bind the house by lien on a purchase from others. This was followed by Brown v. Cowan & Steele, 110 Pa. 588. Brown, the owner, purchased lumber for his house from Barnes, a dealer in lumber, and paid him for it; Barnes bought part of the lumber from Cowan & Steele, and they, claiming it was furnished on the credit of Brown's house, filed a lien.    The court below instructed the jury that it was not important what the contract was between the owner and Barnes; that if Barnes held himself out to the plaintiffs as a contractor, and they were led by his representations to furnish the lumber on the credit of the house, they had a right to a lien.    It was held by this court that a contractor can only bind the building by virtue of the peculiar statutory relation he bears to the owner under the

contract, and that "This instruction was palpably erroneous; that the owner of a building could thus be entrapped into the payment of a debt which he never contracted and which was not contracted by any one having any legal authority to bind him or his estate, is so monstrous that the mere statement of the proposition is a sufficient argument to refute it . . . . It is the plain and obvious duty of one who deals with an alleged contractor to know the relation which he bears to the owner; failing in this, he furnishes labor and material at his peril."

Phillips on Mechanics' Liens, sec. 497, says : "As the lien is a proprietary interest, for the security of debt arising by implication of law out of the performance of contract, it can in general be created only by the owner, or by some person by him authorized."

Schroeder v. Galland, supra, has given rise to considerable discussion, as if it were a new departure from settled adjudications. It is nothing of the kind. It is but a restatement of the law which had been announced in language which admitted of no other meaning, in a line of cases commencing with Bruner v. Sheik, in 1845. The criticisms on the decision seem to have been prompted more by the concise statement of a principle, in somewhat more significant language, than by any newness in it. It pointedly holds that the subcontractor and material man can have no right against the owner not founded on the contract of the principal contractor. That if the principal contractor, by virtue of his contract with the owner, becomes his agent, the agency is special, and the powers of the agent are limited by his contract. If he contracts that no lien shall be filed, none can be.

Whatever may be said as to the conclusion warranted from the rulings in Savoy v. Jones and the line of decisions which follow it, interpreting the act of 1806, nevertheless, confining those decisions to the facts in the cases before the court, even they, as already noticed, did not expressly hold that a debt could be created by statute against an owner, independent of any contract with him. The tenant for life in actual possession could charge the entire estate by his contract, and so could the tenant for years, and the owner of an equitable estate, but the debt in each case was based on a contract with one having an estate or interest in the land. And the act of 1836, with its

supplement of 1840, clearly negatives an intent to create a debt, not having its foundation in a contract with the owner; they only confer a lien for one contracted either directly or indirectly by his contract. Of the many illustrations cited as debts created by statute, but a single one is really to the point. Salvage, the award made and lien given, as against the property of the owner, is supported by no contract, express or implied; those who voluntarily save ships, cargo and passengers from peril have a lien on the property saved only because general maritime law and statute so declare. The debt is created by no contract; from the very nature of the case there could be none. Therefore, in the interests of commerce and navigation, public policy dictates an equitable recompense or debt, and with the debt a lien for it to those who, in the absence of any semblance of contract, incur risk and hardship to save life and property. All other attempts to point out debts, the creation of statute alone, turn out not to be such on examination. Taxation rests on the implied obligation of the citizen to contribute his proportion of the expense of the government which protects his life, liberty and property. Penalties for tortious acts, fines for crimes and misdemeanors, are punishments imposed in the interests of society, that the offender and other evil disposed persons may be deterred from committing like offences. The lien of the innkeeper on the baggage of his guest, of the tradesman on the garment of his customer, of the factor or agent on the goods and money of his principal, of the lawyer on the fund which has been collected by his professional services, all have their foundation in contract, express or implied. The instance given in the argument, of the goods of a stranger in the possession of the tenant being subject to lien and distraint for rent due the landlord, is not an exception. The owner of the goods, having knowledge of the contract, express or implied, between the landlord and tenant, and of the right of distraint, in view of some advantage to himself accruing from a partial and temporary sharing of the tenant's possession, places his goods on the demised premises; voluntarily subjects them to the right of seizure by the landlord; his goods are on the premises by virtue of the tenant's possession, which he shares under the contract, made by the tenant, or they could not be there at all. There is, under our law,

no such thing as a statutory debt, that is, the creation of a debt by law between persons, except that of salvage already noticed, and that has its origin in an imperative public policy.   Given a debt by contract, express or implied, the statute or law gives by special favor a special remedy, and this is all it can give.

It helps but little in the decision of the present controversy to demonstrate that the legislation on this subject has been crude, and that the judgments of the courts are inconsistent, and not always in accord with theretofore well settled rules fixing the respective rights of owners of estates in lands.   The mechanic's lien law was a wholly new subject of legislation ; liens based on contracts concerning chattels, both at common law and by statute, had long been recognized, and the principles on which they were founded, and rules for their enforcement, were well settled ; but a building, to be of any substantial value, must include the land upon which it is erected ; to pledge the building with the land, to one who, by his labor and material, had given it value, without, in many cases, infringing on the rights of the owner, was a question beset with difficulties which were not attendant upon chattel pledges or liens. The object of the legislature was to secure payment of their debts to a class deemed specially deserving.   Those engaged in certain other trades and occupations, tailors, shoemakers, factors, innkeepers, had liens for debts on chattels in possession ; why should not the carpenter, bricklayer, mason and material man also have, as a pledge for payment, the thing they had made valuable ?   While the object was plain enough, the means of reaching it, without gross injustice to the landowner, whose rights had been settled by centuries of legislative enactment, and judicial precedent, were far from plain.   The courts have undertaken, since the beginning, to give effect to the purpose of the law as best they could.   The existence of the debt to him who filed the lien, and that it had been created by contract with somebody in the erection of the building, in none of the adjudicated cases was questioned ; and doubtless, in several of these earlier decisions, the rights of owners were lost sight of in the desire to give effect to the law and thereby satisfy the claimant's debt ; and it may be conceded that, after this lapse of time, a close scrutiny of the judgments and reasons in vindication of them, in this particular, warrants unfa-

vorable criticism. · But it is not very hard, in looking back over more than half a century to the very beginning of a new departure in legislation, to point out defects in the first enactments, nor to find fault with the judicial interpretation of them. Courts try to give effect to the new law, while they try to avoid· the confusion which comes from too rudely displacing the old, with a result, often of apparent, sometimes of real, contradictory decisions. But observation and experience in the untried field eventually lead to greater explicitness in enactment, and reasonable certainty in administration. As has been said before, the pioneer who lays out the first path through the forest has difficulties to contend with not always considered by those who come after him ; they, looking over the cleared ground, see swamps and elevations which could have been. avoided, while he saw no other way than to cut through or climb over them ; he had but little to guide him but the end to be reached, but they have the knowledge gained from his mistakes, which experience alone now demonstrates to have been mistakes. We do not desire to be understood as asserting that there are not lawyers capable of framing a perfect statute on a new subject of legislation, and wise enough to at once expound and enforce it by judgments that will stand the test of all time. But it is apparent from both legislative and judicial history that they never consented to sit in either legislature or courts ; that history shows nearly all our laws had their beginnings in crude enactments followed often by mistaken exposition. Laws seem to be born full grown about as often as men are. So, whatever may be the logical deductions from some of the decisions which, prior to the act of 1840, held the entire estate bound by the lien, the weight of authority is, that, without violence to settled legal principles, a debt without a contract cannot be created against the owner. If it be conceded that, by mere legislative fiat, an indebtedness by one man to another may be established independent of contract, it necessarily follows that the legislature may prohibit the debtor from relieving his property by contract from the lien of such indebtedness. The act of 1891, in effect, establishes a debt when it prohibits an owner from contracting against incumbrances on his property, arising from. indebtedness contracted by others. It declares, that while all others shall pay once, he,

for improvements, under certain circumstances, shall pay twice, although he seeks to protect himself against this injustice by express contract.

The owner's contract imposes payment of the subcontractor's debt on the contractor who expressly contracts it; the law, in the face of this contract, reimposes it upon the owner. This is more than a remedy for an existing right; it is an attempt to confer a right without a debt to support it: Donahy v. Clapp, 12 Cushing, 440.

Whatever right appellant has, must be implied from White's contract with Wolf; an exhibition of that contract shows an express covenant which extinguishes the otherwise implied right; the contract is between the owner who desires to build, and the man who undertakes to perform the work. Why should not the owner freely contract in a purely business transaction so as to protect his property from unjust claims? There is no question of public policy involved, no exercise of the police power. Is it within legislative power to forbid such a contract? The legislature has all power not withheld from it by the people in their fundamental law. Article 1, section 1, of the constitution declares that: "All men are born equally free and independent and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Life, liberty and property are put upon the same plane, and an indefeasible right to the enjoyment of the first two, and to the acquirement and possession of the third, are placed beyond the power of any department of the government. What constitutes an indefeasible right to acquire and possess property? Frorer v. People, 31 N. E. R. 397, and Cooley on Constitutional Limitations, secs. 391 and 393: "The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in the manner which he has hitherto enjoyed under the law, and which B, C and D are still allowed by the law to enjoy, it is clear that he is deprived of both liberty and property, to the extent that he is thus denied the right to contract." ENGLISH, J., in State v. Coal Company, 36 W. Va. 802, quotes SIR GEORGE JESSEL, thus: "If there is one thing more than any other that public

policy requires it is that men of full age and competent understanding shall have the utmost liberty to contract." Com. v. Perry, 155 Mass. 117: " The right to acquire, possess and protect property includes the right to make reasonable contracts, which shall be under the protection of the law."

Hare's Constitutional Law, 357 : " The term property may be used to signify the thing owned or possessed, or the rights and privileges which together make up the aggregate of use or enjoyment implied in ownership. Property may therefore justly be defined as ' the dominion or indefinite right of user, or disposition which one may exercise over particular things or subjects.' This is its appropriate meaning, and that which it has in the constitution, although it is not infrequently used to indicate the thing, rather than the right, and much of the uncertainty and confusion, observable in the decisions, have arisen from overlooking this distinction."

Phillips on Mechanics' Liens, sec. 65: " A fundamental principle underlying the ownership of property is the right of possession and enjoyment, to be disturbed only by the voluntary act of the owner. The lien of a mechanic being a remedy, by which the property of one man may be taken for the benefit of another, it necessarily follows that it can only arise by the free consent of him to whom it belongs."

If, then, the indefeasible right to acquire and possess property necessarily includes the right to make reasonable contracts for its improvement, was the covenant to protect the owner an unreasonable one as to either contractor or subcontractor? " The contractor agrees that no liens shall be filed against said works, or on account of said contractor." We held, in Brown v. Cowan and Steele, supra : " It is the plain and obvious duty of one who deals with an alleged contractor to know the relation he bears to the owner; failing in this, he furnishes labor and material at his peril." Although Schroeder v. Galland, supra, has been modified so that now a more specific wording of the covenant against liens is required than appeared in that case, the law as declared there, has been repeated in many cases since. It is said in that case, the subcontractor and material man " are bound to do just what their principal was bound to do, because they assume to perform his contract with the owner to the extent of their undertaking and of course they must perform according to his express limitations." It is said by Chief

Justice STERRETT, in McElroy v. Bradon, 152 Pa. 81, in speaking of the duty on part of those who expect to charge the owner and yet have no direct contract with him, " That duty can be properly discharged only by inquiring of the owner what the terms of the contract between him and the contractor are." In Nice v. Walker, 153 Pa. 125, we held : " The only ground upon which the contractor can bind the building for either materials or labor, is by virtue of the authority delegated to him by the owner, and where no such authority is delegated, but on the contrary is expressly withheld, and he covenants that no liens shall be filed against the building, he cannot file a lien himself, nor can his subcontractors do so."

It has therefore been settled by these decisions that such a covenant, exacted by the owner for the protection of his property, is reasonable, and will be enforced ; that it binds both the principal contractor and those who contract under him ; that it is the plain duty of those who deal with the contractor to ascertain the limit of his authority to bind the owner, if they expect to look to the owner for payment of their debts. If no unreasonable advantage be sought by the owner, and no unreasonable burden be imposed on the subcontractor or material man, then the owner exercises only his indefeasible right of enjoyment of his own property, when he so contracts, a right not in the power of the legislature to take from him.

In John Spry Lumber Company v. Savings Bank, 77 Mich. 199, a statute not in substance different from ours, was under consideration by the Supreme Court of that state. In the opinion holding the statute unconstitutional, the court says : " The law says, in so many words, such lien shall not be defeated by any contract, agreement or understanding between the owner, part owner, or lessee of the real estate, and the original or any subcontractor. This statute is made for the express, and, so far as it differs from other statutes, for the only purpose of enabling strangers to the title to subject it to sale for obligations to which the owner never becomes bound, and in which he has no part whatever. It strikes at the foundation of all property in land. There is no constitutional way for divesting a man's title except by his own act or default. Here his own act is not required, and his freedom from default is no defence. . . . Such a gross perversion of all the essential rights of property is so plain, that no explanation could make it plainer."

This act, as in the one before the court in Godcharles v. Wigeman, 113 Pa. 437, undertakes to declare invalid private contracts between parties sui juris, which the court holds is beyond legislative power; the court says: "An attempt has been made by the legislature to do what in this country cannot be done; that is, prevent persons who are sui juris from making their own contracts."

Nor is the second section of the act any more effective for the manifest purpose, than the first. The first section attempts to create a debt, and give a lien therefor, against the express covenant in the contract; the second section attempts to frame a new contract, and substitute it for the one made by the parties.

It is conceded in the argument that the covenant not to file a lien binds the principal contractor. Declaring him the agent of the owner in no way changes the situation of the subcontractor. His right still depends on the contract and is limited or wholly negatived by its terms. Unless the legislature can establish, between parties competent to contract, a new and different one, to which neither has assented, the right of all parties originating in the contract must be ascertained from the contract; an inspection of that shows that the owner has protected his property by an express covenant between him and the only one with whom he could contract. When this contract is made, the owner knows no subcontractors, for there can be none until, by the assent of two minds, the legal relation of owner and principal contractor be established; but, when that point is reached, the right of the owner is fixed by the covenant of the contractor. Then, and not until then, can there be a subcontractor, and his right can rise no higher than that fixed by the contract of his principal. The presumption is, the owner, in the exercise of common business prudence, ascertained the character of the contractor, and the contractor the financial ability of the owner; in this they have no advantage over the subcontractor; the contractor and those with whom he contracts have the same opportunities for intelligent bargaining. If, by the contract already made, no lien can be filed, the subcontractor knows, or can know it, and if not satisfied of the personal responsibility of the contractor, can demand other security for his work or material. But neither the con-

tractor nor the legislature can change the contract, as made, without the consent of the owner, one of the parties to it. The subcontractor "cannot have the benefit of the builder's contract without accepting the conditions upon which those benefits are incurred." Schroeder v. Galland, supra, 286. And the legislature cannot make a new contract for the owner. " The legislature makes laws, but laws are not contracts; their natures are essentially different: " Plank Road Co. v. Davidson, 39 Pa. 440.

In Sharpless v. Mayor of Phila., 21 Pa. 147, BLACK, C. J., in delivering the opinion of the court, says: " It is objected that these laws contract for the people of the city, and as the legislature cannot impair a contract, neither can they make one between parties who do not themselves assent to it. . . . I do not say, however, that a contract between two individuals, or between two corporations, can be made by the legislature. That would not be legislation. Besides, it would be impossible in the nature of things; for the essence of a contract is the agreement of the parties."

If there be such power in the legislature as is assumed in the second section of this act, then every business relation between any two persons may be declared that of principal and agent, with unlimited authority in the agent to contract debts which shall bind the property of the principal, in the face of positive agreement to the contrary. Such interference with the indefeasible rights of freedom of contract in the acquisition and protection of property, the people have plainly reserved from legislative power.

That the legislature may give special remedies for the collection of certain debts, has long been settled; that it may not take one man's property to pay the debt of another against the consent of the owner, is just as well settled. Whatever reasonable regulations the legislature might make, as to notice to subcontractors and material men, of the terms of the contract between the owner and the only one with whom he bargains, the principal contractor, such as, that it shall be in writing, and shall be recorded, would be clearly within legislative power. But the second section goes far beyond regulation for the better securing of a remedy; it makes a new contract for the owner with persons wholly unknown to him, notwithstanding his ex-

press dissent, and which, in effect, subjects his property to the payment of a debt he owes not.

It is possible that scheme of government which contemplates a community of lands and goods will best promote the happiness of our race, but if so, the people of this commonwealth have said the contrary in their fundamental law.

The judgment of the court below is affirmed, and the appeal is dismissed at costs of appellant.

DISSENTING OPINION BY MR. JUSTICE MITCHELL :

I am obliged to dissent entirely from this judgment, and the importance of the question seems to make it proper that I should in a general way indicate my reasons.

It is the province of the legislature to declare the public policy of the state, including what contracts shall be lawful, in what form they shall be made, and what shall be their effect. From the earliest days of the republic it has done this without question, whenever the contract itself or its collateral effect touches matters of public interest or policy, of which the legislature is the exclusive judge. Thus under statute all leases for more than three years are at will only, unless in writing, no matter how explicitly the parties contract for a longer term. Under statute a loan of money is only a loan at six per cent, no matter how plainly the parties express their intent that it shall be at a higher rate. Under statute as well as under the common law, partnership involves certain liabilities to third parties, no matter how strictly the partners may contract among themselves to avoid this result. And the courts without the least hesitation enforce the liability of a principal for the acts of his agent within the apparent scope of his authority, no matter how contrary to his orders in fact. But it is unnecessary to multiply examples, as the greatest example of all is the mechanic's lien system itself. It has no other basis than the incorporation of liability for work and materials into contracts for building, by legislative mandate, without the slightest regard to the actual intentions of the parties. No one who contracts for having a house built intends, apart from statutory compulsion, to give a subcontractor or material man a claim against him or his land, any more than he contemplates, when he orders a suit of clothes, a liability to the merchant from

whom the tailor buys the cloth, or to the workmen who sew it together. The result follows from the statute alone, because the legislature has enacted that a contract to build a house shall carry with it an authority to the contractor to pledge not only the house but the land on which it is to be built, for payment of the labor and materials sold on the credit of it, even though the materials do not in fact go into it. It is the creation of an agency, by the legislature, as a matter of public policy without regard to the will of the owner.

Of course there must be a contract as the foundation of the claim. The legislature has not undertaken to say that any man's land shall be charged without his own act as a basis. But it has said that if he makes a certain kind of contract it shall include a certain kind of liability as a consequence, whether he so intends or not. Its right to make and enforce such a rule as to future contracts has never hitherto been successfully questioned.

It was held in Schroeder v. Galland, 134 Pa. 277, that the statutory lien being primarily for the benefit and security of the contractor might be waived by him, and if he waived it for himself he necessarily waived it for all who claimed through him. Subsequent cases have established the rule that the waiver to be effective must be clear and unequivocal: Nice v. Walker, 153 Pa. 123; Smith v. Levick, Id. 522. The act of June 8, 1891, P. L. 225, changes the rule only so far that the right of the subcontractor shall not be waived except by himself in writing. That is the whole effect of the act. It gives no new right to any one, but simply provides that the right of lien under existing laws shall only be waived by the possessor of the right himself. I am unable to see that this is anything more than the control over the form and effect of future contracts which has always been within the province of the legislature.