## Brown *versus* Cowan & Steele.

1. The words " contractor, architect or builder," as used in the Act of June 16th, 1836 (P. L. 696), which provides that a mechanics' lien may be filed for materials furnished such person, mean a person employed to construct the building and not a mere workman or material man.

2. One who merely furnishes lumber for the erection of a building is not a contractor within the meaning of the above Act; there is no privity between him and the owner through which those from whom he may purchase may subject the building to a lien.

3. In a *scire facias* upon a mechanics' lien, it is manifest error to charge that if the claimant parted with his lumber on the credit of the building and on the representation of the man who ordered it that he was a contractor for the erection of the building, then the jury need not inquire into the actual relation between such person and the owner.

ERROR to the Court of Common Pleas of *Butler county:* Of October and November Term 1885, No. 41.

October 19th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

This was, in the court below, a *scire facias* issued on a mechanics' lien filed by Cowan and Steele against Samuel H. Brown, owner or reputed owner, and J. D. Barnes, contractor.

On the trial, before McJUNKIN, P. J., the following facts appeared: In the spring of 1879, Brown determined to repair his dwelling house in Fairview township. Barnes, who was at that time dealing in lumber and doing carpenter work, called upon Brown and desired to furnish him with the lumber necessary for the repair of said building. Brown, after visiting several lumber yards with a view of ascertaining where he could get the lumber cheapest, gave Barnes the contract for the same.

The lumber was furnished by Barnes on April 26th, 1879,

[Brown v. Cowan & Steele.]

at Karns City from which place Brown hauled it to his house. Brown paid Barnes $30 on account at this time, and subsequently, on August 6th, 1879, paid him in full, taking his receipt therefor. At the time the lumber was purchased, Barnes was not employed by Brown in any capacity, but, when the building was about half completed, he worked upon the same a day or two, and received wages at the rate of $2 or $2.50 per day. It appeared that he then agreed to superintend the job, but, after the two days' labor, he left and did no further work on the premises.

On September 26th, 1879, Cowan and Steele filed a mechanics' lien against Brown, owner, and Barnes, contractor, and the house and land of Brown for $213.07 claiming that the same was due for lumber and material furnished to Barnes on April 26th, 1876, on the credit of said house, and used in its construction.

Cowan testified that he sold the lumber used in the construction of Brown's house to Barnes for that purpose and on the credit of the building, that Barnes said " he would see Mr. Brown and send up a bill for us to fill, and we filled the bill and shipped it as he directed for Samuel Brown and charged it to Samuel Brown by J. D. Barnes."

Brown and Barnes both testified that Barnes was not a contractor for the erection, construction or repair of the building, but only to furnish the lumber therefor at a fixed price. Barnes further testified that he purchased this lumber on his own credit, and Brown testified that he knew nothing whatever of Cowan and Steele in the transaction.

The court charged the jury, *inter alia*, as follows: "Mr. Barnes swears that he did not purchase on the credit of Mr. Brown. What Mr. Barnes swears to afterwards, or what he may swear to, does not relate back to the time that he obtained the lumber, or the purpose with which the plaintiffs here parted with their property. Did Barnes represent to the plaintiffs that he was the contractor for the building to be repaired or put up, and that the lumber was for Mr. Brown's building? Did he represent that to the plaintiffs? He may have represented a falsehood. It may be that he was not stating the truth. That does not affect the plaintiffs. Did he represent that he was the contractor? Did the plaintiffs part with their property on the faith and credit and confidence that the building would be subject to payment of their claim as the mechanics' lien law authorizes?"

The jury retired, and afterwards returned for further instructions, when the court continued as follows: "Gentlemen, you ask a question we could not answer unless in open court and in presence and hearing of the parties and their

counsel. The question you ask, 'Is the fact of Barnes being considered the contractor essential in determining a verdict.' I suppose you mean by that, is it essential to find from the proof, if satisfied on that question, whether or not Barnes was actually the contractor in the sense and meaning of the word contractor. We think that we said to you that, if he held himself out and represented himself to the plaintiff here, Mr. Cowan, as a contractor or as having a contract, and, if you find that the plaintiffs parted with the lumber on that strength and upon that faith, it is not necessary in the trial of this case to follow that up, or to require the plaintiff to follow it up, and ascertain the contract, or the actual contract—what shape it was in between the contractor and owner. The matter for the jury to ascertain, under the proofs in the case, is what led the plaintiff to part with his property? This man, Barnes, may have been a fraud, or he may have been a villain, and possibly was, or he would not have left this debt unpaid, and taken the money and put it into his pocket and gone, probably, to parts unknown. We have nothing to do or say in his behalf. You have his evidence and declarations. The fact for the jury to determine is what led the plaintiffs to furnish the bill of lumber? Was it on the representations of Barnes that he had the contract, that he was the contractor, and was going to make these repairs, going to build or repair this house for the defendant, Mr. Brown? So far as this is concerned, if the lumber were delivered on that faith and for that purpose, and was charged to Mr. Brown at the time upon the books, then it would be for the jury under these proofs, if you are satisfied that it was upon the faith and credit of the building that the plaintiffs parted with their property, then your verdict should be for the plaintiffs for the amount of their claim with interest from the time the lumber was so furnished."

Verdict for the plaintiffs for $228.62 and judgment thereon. Defendant then took this writ, assigning for error the portion of the charge above quoted, and the subsequent instructions to the jury.

*R. P. Scott* and *John M. Thompson*, for plaintiff in error.— The evidence showed that Barnes did not assume the relation of contractor for erection, hence there was no such privity between him and Brown, the owner, as would enable him to charge the building of Brown with a lien for the lumber he purchased from Cowan & Steele, the defendants in error, in order to fill his own contract with Brown to sell and furnish him with the lumber necessary for the repair of said building:

Duff v. Hoffman, 13 P. F. S., 191; Schenck v. Uber & Tees, 31 Id., 31.

The true question in the case—the one upon which the lien was to stand or fall—was the relation which Barnes occupied toward Brown and his building. Was he a contractor for erection? If he were, the lien was good, otherwise it was not, and no recovery could be had thereon.

*G. S. Crosby* (*Newton Black* with him), for defendants in error.—The cases cited by plaintiff in error, viz.: Duff v. Hoffman and Schenck v. Uber & Tees, differ entirely from the present case. In those cases the claimants were lumber dealers, and did not pretend to have anything to do with the erection or construction of the buildings.

One who directs and oversees the erection of a building is entitled to a lien: Bank v. Gries, 11 Casey, 423; Duff v. Hoffman, 13 P. F. S., 191; St. Clair Coal Co. v. Martz, 25 Id., 384.

The charge as a whole contains a fair exposition of the law, and this court will not reverse on critical objections: Galbraith v. Black, 4 S. & R., 207; Carothers v. Dunning, 3 Id., 373; Insurance Co. v. Snyder, 3 W. N. C., 269; Barr v. Boyles, 15 Norris, 36.

Mr. Justice CLARK delivered the opinion of the court November 9th, 1885.

This case arises upon a *scire facias sur* mechanics' lien, issued by Cowan & Steele against Samuel H. Brown, owner, and J. D. Barnes, contractor; the claim is $213.07 for lumber sold by the plaintiffs to Barnes, a part of which, at least, was used in the construction and repair of a dwelling house belonging to Brown. It is conceded that the purchase of the lumber was by Barnes, and that Brown knew nothing whatever of Cowan & Steele in the transaction. The vital question in the cause for determination at the trial was whether or not at the time of the purchase of the lumber any such relation subsisted between Barnes and Brown as would, under the mechanics' lien law, bind the property of Brown for the price. The lien exists only by Statute, and the right in any case to maintain it must, of course, be found in the Statute. The Act of 16th June, 1836, contemplates that the work or materials for which a lien may be entered may be performed or furnished either under a contract with the owner, or with the contractor, architect or builder. It is admitted that Cowan & Steele did not furnish this lumber, directly or indirectly, under any contract with the owner; Brown was, therefore, in no way personally responsible for it. But was the dwelling house of Brown, with the curtilege appurtenant, liable for the lumber

through the contract of Barnes? This involves the question whether or not Barnes was a contractor, architect or builder within the meaning of the Act of 1836.

In Duff *v.* Hoffman, 63 Pa. St., 191, a contractor is defined to be a person employed to erect or construct a building or any main division thereof; and, of course, where a lien is allowed for work or materials for the repair, alteration or addition of a building, the contractor is the person employed to construct the same. A contractor is not a mere workman nor a material man; there is a plain and obvious distinction between a contract to erect or repair, and a contract to furnish towards the erection or repair whether it be of work or materials. An architect or builder is the agent for the owner, and, representing him, has power by contract to subject the building to a lien for work or labor procured by him; the contractor, however, builds upon his own credit, and binds the building by virtue of the peculiar statutory relation he bears to the owner under the contract.

Upon a careful examination of the entire testimony in this case, we find no evidence which would justify a jury in finding that Barnes was either a contractor, architect or builder. There is no proof, whatever, that he had the contract for the erection or repairs of this building or any part of it; and it is not pretended that he was an architect or a builder. At the time the lumber was purchased, he was not employed in any capacity whatever, either as a workman or otherwise; his contract was to furnish lumber, that and no more, and it is well settled that one who merely furnishes lumber or other materials towards the erection of a building is not a contractor; there is no privity between him and the owner through which those from whom he may purchase the materials may subject the building to a lien. It does appear that Barnes worked upon the building a day or two after the building had been about half completed, and received wages at the rate of $2 or $2.50 per day; that, at the same time, he agreed to superintend the work to some extent, but, having other work to do, after two days labor had been performed, he ceased both to work and to superintend, and thereafter had no connection whatever with the building.

The learned judge, however, seems to have been of the opinion, and so instructed the jury, that it was immaterial whether Barnes was in fact a contractor, architect or builder if, at the time of the purchase, he represented himself to the plaintiffs to be such, and the lumber was furnished upon the faith of these representations, and upon the credit of the building.

In his general charge, he says: "Did Mr. Barnes represent

to the plaintiffs that he was the contractor for the building to be repaired or put up, and that the lumber was for Mr. Brown's building? Did he represent that to the plaintiffs? He may have represented a falsehood; it may be that he was not stating the truth; that does not affect the plaintiffs. Did he represent that he was the contractor? Did the plaintiffs part with their property on the faith and credit and confidence that the building would be subject to the payment of their claim, as the mechanics' lien law authorizes?"

After the jury had retired, they returned, and propounded to the court this inquiry: "Is the fact of Barnes being *considered* the contractor essential in determining a verdict?" To which the court replied as follows: "I suppose you mean by that it is essential to find from the proof, if satisfied on that question, whether or not Barnes was *actually* the contractor, in the sense and meaning of the word contractor. We think we said to you that, if he held himself out and represented himself to the plaintiff here, Mr. Cowan, as a contractor or as having a contract, and if you find that the plaintiff parted with the lumber on that strength, and upon that faith, it is not necessary, in the trial of this case, to follow that up and ascertain the contract, what shape it was in between the contractor and owner. The matter for the jury to ascertain, under the proofs in this case, is what led the plaintiff to part with his property. This man, Barnes, may have been a fraud, or he may have been a villain, and possibly was, or he would not have left this debt unpaid."

This instruction was palpably erroneous. That the owner of a building could thus be entrapped into the payment of a debt which he never contracted, and which was not contracted by any one having any legal authority to bind him, or his estate, is so monstrous that the mere statement of the proposition is a sufficient argument to refute it. If the law were so, the owner of a building, in process of construction, would be at the mercy of every lying scoundrel who could induce a purchase of materials upon the supposed credit of the building under the false pretence that he was a contractor, in whole or in part, for its erection.

It is the plain and obvious duty of one who deals with an alleged contractor to know the relation which he bears to the owner; failing in this, he furnishes labor or materials at his peril. In this case, the owner did nothing which he should not have done, he omitted nothing which, under the circumstances, he should have done to protect himself in the purchase of this lumber. On the other hand, the plaintiffs seem to have accepted the statement of Barnes without inquiry; they gave no such diligence to the ascertainment of the exact authority

of Barnes as a reasonable degree of prudence demanded; by shipping the lumber to Barnes, they intrusted him with the possession which is the *indicium* of ownership and one of the muniments of title to personal property.   Brown was or seems to have been a *bona fide* purchaser from the apparent and accredited owner, and it is a rule well settled in the law that, when a loss must fall upon one of two innocent parties, it must be borne by the party whose negligence or lack of prudence and forethought occasioned the loss.

> Judgment reversed, and a *venire facias de novo* awarded.