F. W. COUCH, W. H. CHILD, EUGENE PEYTON and J. H. WELDON, Appellants, v. J. WELSH and THE HUNTSMAN COPPER MINING COMPANY, a Corporation, Respondents.

No. 1304.   (66 Pac. 600.)

1. **Agreement: Construction: Mining Lease: Landlord and Tenant.**

Where an agreement between the owners of a mining claim and others recited that the owners were "desirous of leasing" as well as selling the property, and that the owners "did grant, lease, and demise" the claim, and it was provided that the others were to pay a royalty on all ores mined, with the option of purchasing the claim, in which event royalties paid were to be applied on the price, the agreement was not a contract of purchase, but a lease, notwithstanding the option, and the payment of royalties, instead of rent in money.

Couch et al. v. Welsh and Mng. Co.

**2. Same: Lessee's Right to Remove Improvements.**

The lessees in a mining lease may remove buildings and railroad tracks placed on the premises by them where such removal causes no material injury to the freehold, and the lease is silent as to the right of removal.

**3. Motion for Nonsuit: Sufficiency.**

Where, in an action by the lessors of a mining claim to recover damages for the lessee's removal of fixtures placed by them on the premises, no agreement between the parties was shown, save a lease which contained no restriction on the lessee's right to remove improvements made by them, a motion for a nonsuit on the ground, among other things, that the proof showed no contract requiring defendant to leave improvements on the premises, was sufficiently specific.

**4. Same: Direction of Verdict: Bad Practice.**

The direction of a verdict for defendant at the time of sustaining plaintiff's motion for a nonsuit, while not commendable practice, was not prejudicial error.

(Decided November 13, 1901.)

Appeal from the Seventh District Court, Grand County.— *Hon. Jacob Johnson,* Judge.

Action to recover damages for the removal, by the respondents, of certain improvements from certain mining claims.

AFFIRMED.

*Messrs. Frick & Edwards* for appellants.

In presenting this case we might rest it alone upon the form of the motion for nonsuit, as under the repeated rulings of this court the motion is entirely wanting in specifying the grounds upon which it is based. It is a mere general statement that the proof fails to show any liability. The motion is too indefinite. White v. Rio Grande W. Ry. Co., 22 Utah

138; 61 Pac. 568; Lewis v. Silver King Min. Co., 22 Utah 51; 61 Pac. 860; McIntyre v. Ajax Min. Co., 20 Utah 323; 60 Pac. 552; Wild v. Union Pacific R. Co., 63 Pac. 886.

It was contended by the respondent mining company, and as we understood the court, it so held, that the parties to said agreement sustained the relation of landlord and tenant in respect to each other, and that the law in respect to fixtures pertaining between landlord and tenant controlled the respective rights of the parties to this case. It was upon this ground, as near as we can determine from the ruling of the court, that the motion for a nonsuit was granted. In other words, the court held, as we understood it, that the relation of the parties was that of landlord and tenant; that the improvements sued for having been placed on the ground by the tenant for its convenience; such improvements are considered in law as mere "trade fixtures" and unless it is shown that such fixtures were of a permanent character or permanently affixed to the soil, the tenant could remove the same. The court thus assumed both elements, viz.: That the buildings and track were not affixed to the soil and that the presumption of law was in favor of defendants. Both of these conclusions are erroneous.

In this case the respondent mining company, did not enter upon the property in question as a mere lessee or tenant. The mere fact that the instrument under which possession was taken was called a lease, is of little significance, at all events not controlling. A mere examination of the terms of this instrument discloses that the features distinguishing the relation of landlord and tenant from other relations in respect to the possession of real property, namely, the payment of rent, is wholly absent. The mining company did not agree to pay any rent, did not pay any, and could not be dispossessed by the failure to pay any. On the other hand, the object to purchase; the right of becoming the legal owner on payment of the purchase price, fixed and agreed upon, is be-

yond question.   The "royalty" provided for, if paid, was to
be applied upon the purchase price.   The respondent, mining
company, went into possession thus under an option or execu-
tory agreement of purchase.   A deed to the fee was placed
in escrow under the terms of the agreement, which deed was
to be delivered upon payment of the stipulated purchase price.
This purchase price might be obtained from "royalties" alone,
for it was specifically provided in the agreement, that when
the "royalties" amounted to the sum of the several payments
to be made as purchase price, then the deed was to be deliv-
ered forthwith.   The respondent, mining company, must thus
be held to have gone into possession of the property, with the
intention of becoming the owner thereof; it must also be held
that it made the improvements with such intention.  The
presumption of law thus is that the improvements placed upon
the premises were permanent, and the burden is upon re-
spondent to rebut this presumption.   Upon this proposition
the law is both clear and explicit.   2 Devlin on Deeds, sec.
1222; Washburn on Real Prop. (4 Ed.), top p. 6; Hinkley
v. Black, 70 Me. 473; s. c. 35 Am. St. Rep. 346; Pomeroy
v. Bell (Cal.), 50 Pac. 683; 13 Am. and Eng. Ency. Law
(2 Ed.), 672.

*George L. Nye, Esq.,* for respondents.

Was the motion for a nonsuit too indefinite to be con-
sidered by the trial court under the numerous rulings of this
court and the settled law on such motions?

Appellants rely upon the cases of White v. Rio Grande
Western Ry. Co., 22 Utah 139, 61 Pac. 568; Lewis v. Silver
King Co., 22 Utah 51, 61 Pac. 860; McIntyre v. Ajax Co.,
20 Utah 323, 60 Pac. 552; Wild v. U. P. Ry. Co., 63 Pac.
886.   With these cases and the principle therein laid down
by this court as governing the essentials of a motion for a
nonsuit, we have absolutely no controversy, but we insist that

the motion for a nonsuit, in the case at bar, comes squarely within the rule laid down in the above mentioned cases.

In order that the motion may be fully before us for consideration we reprint it at length:

"We move the court at this time for a nonsuit for both parties defendant, and I desire to make the motion for the defendants separately, they having answered separately in this case, upon the ground that there has been an utter failure of proof on the part of the plaintiffs of any liability on the part of either defendant, and upon the ground that there has been no contract shown of such a character as would require the defendant, the Huntsman company, to leave improvements upon the premises. That there has been nothing shown against the defendant, Welsh, save only the admissions which have gone in here to the effect that he purchased from the defendant, Huntsman Copper Mining Company, for a valuable consideration, and after he purchased he moved certain property."

This court will note by the amended complaint of plaintiffs' on which this case was tried, that plaintiffs below and appellants here, brought this action as in the nature of an action for waste under the statute, and prayed for triple damages "as by the statutes provided." Such action necessarily presupposes a tenancy, a reversionary right in the plaintiffs and a lease, under the terms of which, defendants would not be entitled to remove improvements placed upon the premises by them. In contemplation of these matters, defendants made their motion for a nonsuit at the close of plaintiffs' testimony, and in the language of this court in Lewis v. Silver King Mining Company, supra, the defendants "placed their finger on the exact point of their objection," namely, that there had been no contract shown of such a character as would require the defendant, the Huntsman company, to leave improvements upon the premises; and the defendant, Welsh, placed his finger upon his point made in the motion, that there had been noth-

ing shown against him save that he purchased from the defendant company certain property and thereafter moved it.

Our motion for a nonsuit, on the part of the defendant company and on the part of the defendant, Welsh, went to the very meat of the litigation. It pointed out the exact point of the objection of the Huntsman company, namely, that the contract under which it was in possession, and the only contract up to that time shown, was not such a contract as required it to leave improvements upon the premises. It then became a question of the construction of the contract under which the Huntsman company held posession. There could be no misunderstanding on the part of either the court or the appellants, of the point made by the respondent, Huntsman company, upon that motion. It was the insufficiency of the only contract shown up to that time, and the insufficiency of that contract, in the particular of requiring the defendant, Huntsman company, to leave improvements erected by it upon the premises at the end of its term.

Was the court powerless to dispose of the cause upon the merits after granting a nonsuit?

We contend that the court did not err in directing a verdict or in receiving and filing the same, and we further contend that the judgment rendered by the court was not a judgment upon the merits. This very matter is elaborately discussed in 2 Thompson on Trials, section 2267 et seq., where it is said "an order of nonsuit, or a peremptory instruction given in compliance with such a motion, does not undertake to decide any question of fact, but simply pronounces the law arising upon the evidence, admitting the same to be true." Harris v. Woody, 9 Mo. 113-116.

The direction of a verdict for defendants was nothing more than any other way of granting the nonsuit on the motion. It has been repeatedly held that a motion to direct a verdict for the defendants is the same in substance and effect as a motion for a nonsuit. McKay v. Montana Union R. Co.,

13 Mont. 15, 31 Pac. 999; Creek v. McManus, 13 Mont. 152, 32 Pac. 675; Wombough v. Cooper, 2 Hun. (N. Y.) 428; Lomer v. Meeker, 25 N. Y. 361; Appleby v. Astor F. Ins. Co., 54 N. Y. 253; Gerding v. Haskin, 141 N. Y. 514; 6 Ency. of P. & P., 694.

Had the appellants made out a prima facie case?

This question is really divisible into two subordinate questions: (a) Did the relation of landlord and tenant exist? (b) Under the terms of the contract by which the Huntsman company obtained possession, could they remove the buildings? We must answer yes to both questions.

One thing insisted on by appellants in their claim that the relation of parties was that of vendor and vendee and not that of landlord and tenant, is that the instrument contains no provision for the payment of rent. Let us examine the instrument itself. The lessees, the predecessors in interest of the Huntsman company, agree to commence mining ore and developing the leased premises not later than a certain day, and to continuously prosecute the work in a good and miner-like manner and do ninety shifts of work each month during the term. The lease then goes on to provide for a forfeiture in case said ninety shifts of work were not performed as stipulated.

The payment of rent is nothing but the consideration for the lease and consideration may be either a benefit to one party or a detriment to the other. Lawson on Contracts, sec. 92, and cases cited.

Surely it will not be contended that the doing of ninety shifts of work each month was no detriment to the lessees. The rent was periodic, the required amount of work was to be done each month and if not done the lessors had the right to declare a forfeiture the same as they would have had upon failure to pay a monthly installment of cash rent, if such had been reserved.

Rent need not be money. 2 Black. Com., 41; Townsend

Couch et al. v. Welsh and Mng. Co.

v. Isenberger, 45 Iowa 670; Johnson v. Smith, 24 Am. Dec. 339; 18 Ency. of Law (2 Ed.), 261.

A royalty reserved on the amount of ore taken from land is rent. Regina v. Westbrook, 59 E. C. L. 178; Daniel v. Gracie, 51 E. C. L. 145.

The lease was for a definite term.

The mere fact that there was coupled with the lease an option to purchase does not prevent the creation of the relation of landlord and tenant. Clifford v. Gressinger, 96 Ga. 789; Hartwell v. Black, 48 Ill. 301; Barrett v. Johnson, 2 Ind. App. 25; Nobles v. McCarty, 61 Miss. 456; Crinkley v. Egerton, 113 N. C. 444; 18 Am. and Eng. Ency. of Law (2 Ed.), 169.

It has become, by virtue of decided cases, a rule of law that the greatest latitude and indulgence will be allowed in favor of the tenant in his claim to have particular articles considered as personal chattels as against the claim in favor of the freehold or inheritance. 13 Ency. of Law (2 Ed.), 639; Elwes v. Maw, 3 East 38; Elliott v. Bishop, 10 Exchequer 507; Van Ness v. Pacard, 2 Pet. (U. S.) 137; Bircher v. Parker, 40 Mo. 118; Dubois v. Kelly, 10 Barb. (N. Y.) 496; Reynolds v. Shuler, 5 Cowen (N. Y.) 323; Wall v. Hinds, 4 Gray (Mass.) 270; s. c. 64 Am. Dec. 64.

The buildings were not fixtures. To constitute a fixture there must be both actual annexation and an intention to annex, and the rule as between landlord and tenant is most liberal in its application. Kelly v. Austin, 46 Ill. 158; Pennybecker v. McDougal, 48 Cal. 160.

That the tenant has the absolute right to remove those articles which were erected by him and are not so annexed as to be part of the freehold, will certainly not be controverted. 13 Ency. of Law (2 Ed.), p. 641.

BARTCH, J.—This action was brought to recover damages for the removal by the respondents of certain improve-

ments from certain mining claims. From the record it appears that on May 5, 1899, the appellants, who were the owners of the mining claims, executed a bond and lease to Ernest G. Miller and Peter McCourt, who then assigned the same to the respondent Huntsman Copper Mining Company. The contract thus assigned contained a covenant granting to the lessees the exclusive right to purchase the mining claims at a stipulated price, and also covenants obligating the lessees to perform certain work upon the claims to improve the same, with the right to mine and sell the ore, and to pay to the lessors certain amounts as royalty, all of which amounts so paid, if any, to apply as part payment of the purchase price in the event of the election by the lessees to purchase the claims, and of their compliance with the conditions of the bond and lease. The contract also provided for forfeitures of all the rights of the lessees, together with all moneys, if any, paid as part of the purchase price, in case of a failure to comply with the conditions of the agreement. After the execution and assignment of the bond and lease the respondent company went into possession of the property, and, among other things, erected thereon a bunk house and boarding house, and also constructed a track of iron or steel rails in the tunnel, all of which were used in operating the mine. These buildings and track the respondents, while yet in possession, removed from the claims; and thereafter the lessors declared a forfeiture, claiming a failure or refusal on the part of the lessees to carry out the provisions of the agreement. At the trial, after the plaintiffs rested their case, the court, upon motion of the defendants, granted a nonsuit, and at the same time directed the jury to return a verdict, "No cause of action," in favor of the defendants. Thereupon judgment was entered accordingly, and this appeal prosecuted.

The decisive question presented is whether the respondents had the right, under the contract, to remove the buildings and track during the term, and while in possession of the

mining claims.   It is insisted by the appellants, as appears, that the bond and lease constituted simply a contract of purchase, that the relation of landlord and tenant did not exist, and that the buildings and track in dispute were fixtures of a permanent character, and formed a part of the realty.   In neither of these propositions are we able to concur. The contract contains essential characteristics of a lease.   On its face it appears that the lessors were "desirous of leasing" as well as selling the property.   In the agreement they "grant, lease, and demise" the mining claims, fix the term of the lease, and provide for work to be performed, which is to be "not less than ninety shifts" each month "during the term of the lease." Rent is reserved by way of royalty, and the manner of its payment stipulated.   Forfeiture and surrender of possession are provided for in the event of a failure on the part of the lessees to perform any of the covenants of the lease to be performed by them.   These are elements of a lease.   In fact, an examination of the instrument shows that the evident design of the lessors was to lease the mining claims and grant to the lessees the privilege to purchase them, and the mere fact that the agreement also contains a covenant granting the "privilege of purchasing" the demised premises does not destroy its character as a lease.   Nor is such a covenant inimical to the existence of the relation of landlord and tenant between the parties prior to the exercise of the privilege. 18 Am. and Eng. Ency. Law (2 Ed.), 169; Clifford v. Gressinger, 96 Ga. 789, 22 S. E. 399; Nobles v. McCarty, 61 Miss. 456; Hartwell v. Black, 48 Ill. 301; Barrett v. Johnson, 2 Ind. App. 25, 27 N. E. 983; Crinkley v. Egerton, 113 N. C. 444, 18 S. E. 669; Holbrook v. Chamberlin, 116 Mass. 155, 77 Am. Rep. 146. Nor does the fact that the contract provides for the payment of royalty, instead of rent in money, change the character of the instrument, or prevent the creation of the relation of landlord and tenant.   Rent may be made payable otherwise than in money.   2 Bl. Comm., 41.

We are of the opinion that the contract in this case must be regarded as a lease, and that the relation of landlord and tenant existed between the parties to this controversy. Having come to this conclusion the question is, was the removal of the fixtures in dispute by the lessees lawful? The contract is silent as to such removal, and the proof fails to show any other agreement relating to the subject. Doubtless, in general, under the rule of the common law as it prevailed in England, any structures once annexed to the freehold became a part of it, and could not afterwards be removed, except by him who was entitled to the inheritance. This rule, however, although never without exceptions, has been greatly relaxed by modern decisions, especially as between landlord and tenant, in favor of the latter. And this would seem to be in consonance with equity and justice, since tenants usually pay adequate rent for the premises, and should therefore be permitted to remove, during the term, fixtures which they have erected at their own expense for their own convenience and use, when this can be done without material injury to the freehold, and when such removal was within the intention of the tenant at the time of the construction of the fixtures. "In modern times," says Chancellor Kent, "for the encouragement of trade and manufactures, and as between landlord and tenant, many things are now treated as personal property which seem, in a very considerable degree, to be attached to the freehold. The law of fixtures is in derogation of the original rule of the common law, which subjected everything affixed to the freehold to the law governing the freehold; and it has grown up into a system of judicial legislation, so as almost to render the right of removal of fixtures a general rule, instead of being an exception. The general rule, which appears to be the result of the cases, is that things which the tenant has affixed to the freehold for the purpose of trade or manufactures may be removed, when the removal is not contrary to any prevailing usage, or does not cause any material injury to the estate, and which can

be removed without losing their essential character or value
as personal chattels.    The character of the property, whether
personal or real, in respect to fixtures, is governed very much
by the intention of the owner, and the purpose to which the
erection was to be applied." 2 Kent, Comm., 343; 13 Am.
and Eng. Ency. Law (2 Ed.), 639; Van Ness v. Pacard, 2
Pet. 137, 7 L. Ed. 374; Wall v. Hinds, 4 Gray 256, 64 Am.
Dec. 64; Bircher v. Parker, 40 Mo. 118; Reynolds v. Shuler,
5 Cow. 323; Dubois v. Kelly, 10 Barb. 496; Kelly v. Austin,
46 Ill. 156, 92 Am. Dec. 243; Whiting v. Brastow, 4 Pick.
310; Hayes v. Mining Co., 2 Colo. 273; Heffner v. Lewis, 73
Pa. 302; Bartlett v. Haviland, 92 Mich. 552, 52 N. W. 1008.
Upon examination of the authorities it will be seen that the
law regards with peculiar favor the rights of tenants as to
the removal of trade fixtures annexed by them to the freehold
at their own expense; and, applying the principles which
govern such cases to the case at bar, we have no hesi-
tancy in holding that under the contract herein the lessees
had the right to remove the buildings and track, there being
no showing that such removal caused any material injury to
the realty.    Under such circumstances as are herein disclosed,
such fixtures must be regarded as personalty.

The appellants also insist that the court erred in grant-
ing a judgment of nonsuit at the close of the plaintiffs' testi-
mony, claiming that the motion therefor was too indefinite.
The motion was based upon the ground, among other things,
that the proof showed no contract which required the defend-
ants to leave the improvements upon the premises.    As the con-
tract hereinbefore considered was the only one which had
been introduced in evidence, and the only one under
which the lessees held possession of and operated the mine,
and since under that contract the lessees had the right to re-
move the improvements in question, we think the motion was
sufficiently specific.    It called the attention of the court to
the fact that the plaintiffs had introduced no proof showing

any liability on the part of the defendants.   The motion was therefore sufficient to warrant the court in granting the nonsuit.   Nor did the court, under the circumstances disclosed, commit fatal error, as claimed by counsel for the appellants, in directing a verdict for defendants at the same time of sustaining the motion for a nonsuit.   The direction of such a verdict was nothing more than the determination of the case by the court on the same grounds which called for a judgment of nonsuit, and, under the circumstances, no prejudice resulted to the appellants.   We do not, however, wish to be understood as sanctioning such practice.   We simply hold that in this case it was harmless and not prejudicial error. An instruction for such a verdict, given at the close of plaintiffs' case upon the ground of failure of proof, is in effect a nonsuit.   6 Ency. Pl. and Prac., 694; Gerding v. Haskin, 141 N. Y. 514, 36 N. E. 601; McKay v. Railway Co., 13 Mont. 15, 31 Pac. 999; Creek v. McManus, 13 Mont. 152, 32 Pac. 675; Harris v. Woody, 9 Mo. 113-116; Appleby v. Insurance Co., 54 N. Y. 253.

We find no reversible error in the record.   The judgment is affirmed, with costs.

MINER, C. J., and BASKIN, J., concur.