## UNION TRUST CO. OF PHILADELPHIA v. BRANCH MINT OPERATING CO. et al.

Where one who, knowing that a person with whom he contracts is the agent of a third party, contracts with him as principal, and not as agent of the real principal, the latter is not bound.

Persons who furnished labor and materials for the development of a mine under contracts with a lessee thereof purporting on their face to be made for the lessee's own benefit, and not as agent, and with knowledge that the lessee was operating under a lease, contracted with the lessee as principal, and could not hold the lessor liable so as to charge the property with mining liens.

One contracting with the lessee of a mine to furnish labor and materials for its operation cannot charge the lessor therefor as an undisclosed principal without showing that he contracted with the lessee without knowledge of the lessor's existence.

A mining lease gave the lessee the right to develop and operate a mine for a certain monthly rental, and required it to set aside one-third of the net earnings as a fund from which the lessor's bonded debt should be paid, the "net" earnings to be determined by deducting from the gross earnings the necessary "operating expenses, payment of taxes," etc., and provided that the lessee should develop the mines, and at the end of the term deliver in good order, reasonable wear excepted, the buildings, fixtures, and machinery "herein leased," and should keep the property free from debt and post upon the premises a notice that no debt incurred by the lessee would be a lien on the property. **Held,** that the lease did not make the lessee the lessor's agent with authority to contract for material so as to charge the property with miners' liens.

A mining lease between two corporations would be presumed to be made in good faith, though the officers of the corporation were the same.

The fact that the officers of two mining corporations are the same is not of itself proof that one corporation was made the agent of the other by a mining lease executed between them.

A claim of lien for material furnished to operate a mine must be founded upon a contract made with the owner, either directly or through an agent.

No agency results from the relation of lessor and lessee for the purpose of charging the lessor's property with miner's liens for materials furnished in operating it.

(Opinion filed, January 31, 1912.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. RICE, Judge.

Action by the Union Trust Company of Philadelphia against the Branch Mint Operating Company and others. From a judgment for plaintiff, one of the defendants appeals. Reversed and remanded.

*Martin & Mason,* for appellant. *McLaughlin & Ogden,* for respondent.

WHITING, J. This action was brought by Kirk G. Phillips and others against the Branch Mint Operating Company, the Branch Mint Mining & Milling Company, the Union Trust Company of Philadelphia, and James D. Hardin. After appeal to this court, the original plaintiffs conveyed to the Union Trust Company of Philadelphia all their rights under and by virtue of the liens claimed herein, and this court, upon application duly made, has substituted said trust company as plaintiff and respondent. Such substitution having been made after the decision herein was prepared, the wording of the following decision conforms to the title of said cause before the order of substitution.

Plaintiffs sought to foreclose miners' liens which they claimed against the property of the defendant Branch Mint Operating Company, which company plaintiffs alleged was the owner of an interest in the property in question and the agent of the Branch Mint Mining & Milling Company. Plaintiffs alleged that defendants Union Trust Company and Hardin each claimed some inter-

est or lien in and upon the property in question, but that such interest or lien was junior and inferior to the liens of plaintiffs. Plaintiffs asked a decree foreclosing their liens as against all the above defendants. Defendant Hardin denied that plaintiffs had any liens against the property in question, alleging that the operating company was never the agent of the other company. Defendant Hardin also claimed a miner's lien on the property in question prior and superior to the alleged liens of plaintiffs. The cause was tried to the court without a jury, findings of facts and conclusions of law were entered, a decree was rendered in favor of plaintiffs as against all defendants in accordance with the prayer of plaintiff's complaint, and defendant Hardin appealed from such decree.

Under the view which we take of this case, it becomes unnecessary for us to consider appellant's contention that his lien is prior and superior to the alleged liens of respondents, and we will discuss the contention that, under the record herein, the court erred in holding that respondents had any lien upon the property of the mining and milling company. We will therefore omit the findings of facts not bearing upon the latter point, merely noting that the court found facts showing that appellant had a valid miner's lien against the property in question.

The court based its conclusions and decree upon the following finding of fact: "(1) That during the times mentioned in the complaint the Branch Mint Operating Company was the owner of an interest in the property described in said complaint and was the agent of said Branch Mint Mining & Milling Company, and as such agent was operating the premises hereinbefore described, employing men and performing work and labor thereon, and purchasing supplies and materials which were used in the ordinary course of business in the operation of said premises, together with the cyanide mill situated thereupon, and that all of said work and labor and all of said supplies and materials tended to and did develop and improve the property described in the complaint. [The finding then sets out the performance of work by plaintiff as alleged in the complaint and the filing of liens therefor as therein alleged.]"

At the time of making the above finding No. 1, the court, at appellant's request, made the following additional findings:

"(A) Findings of fact No. 1, made at the request of the plaintiffs, is based entirely upon the terms and conditions of a lease executed by the Branch Mint Mining & Milling Company to the Branch Mint Operating Company, and filed for record * * * on November 16, 1908, which lease is as follows, to-wit: [Then follows a copy of the lease dated September 7, 1908, under which the operating company were given the right for the period of five years to enter upon the premises in question, use all of the improvements thereon, and conduct mining and quarrying operations, it to pay as rental the sum of $250 per month, and also set aside the one-third of "net" earnings as a fund from which the bonded indebtedness of the lessor should be entirely paid off. The lessor had the right to inspect the books of the lessee at any time, and lessee was to furnish lessor a semiannual statement of gross earnings, net earnings, payments made, etc. Net earnings were to be determined by deducting from gross earnings (a) necessary "operating expenses"; (b) expenses of maintaining lessee's New York office; (c) taxes of lessee; (d) payment of necessary assessment work; (e) payment of insurance on property; (f) payment of interest on bonds of lessor; (g) payment of expenses to protect legal existence of lessor. Lessee covenanted to work and develop the mines on the leased property, and at end of lease to "deliver in good order, reasonable wear and tear and damages by the elements excepted, buildings, appurtenances, fixtures, and machinery herein leased." Lessee was given right to in any manner develop the property for purpose of removing metal and mineral substances, and "to erect, maintain, equip any building, power house, railways, tramways, bridges, cuts, and rights of way which may be necessary for carrying out the purposes of this lease," and "for preparing for market all ores or metals extracted from said property demised." It was also provided therein: "The party of the second part (lessee) further covenants and agrees that during its tenancy and occupation of the leasehold premises that it will keep the property free and clear of all indebtedness of any kind what-

soever, and keep posted upon the property proper notices as required by the laws of the state of South Dakota that all indebtedness incurred by the party of the second part shall in no way become a lien upon the property."]   (B) Findings that during all the time the work was performed and material furnished by plaintiffs a notice that the mining properties in question were being operated by the defendant Branch Mint Operating Company under lease, and the lessor was not responsible for any debts incurred by lessee, was posted in several places upon the mill and hoist upon the property, and also published in a daily paper published in Deadwood, in the county where property was situated.   (C) That all of said labor was performed and materials furnished under contracts made with the Branch Mint Operating Company, and by its officers in its name and behalf, and not ostensibly for or claiming to act as the agent of the Branch Mint Mining & Milling Company."

Appellant assigns the following errors: "The court erred in holding that the Branch Mint Operating Company was the owner of an interest in the property described in the complaint, and that it was the agent of the defendant Branch Mint Mining & Milling Company, and that as such agent it was operating the premises described.   (2) The court erred in holding that the work and supplies performed and furnished by plaintiffs were so performed and furnished at the special instance of the defendant Branch Mint Mining & Milling Company.   (4) The court erred in giving and entering judgment awarding plaintiffs a lien against the property of the Branch Mint Mining & Milling Company, and ordering a sale thereof in satisfaction of the same."

From finding A it appears that finding 1 is but a mere conclusion drawn from the provisions of the contract contained in finding A; and, if such conclusion is not supported by the terms of such contract, finding 1 must fall and with it the judgment in respondents' favor.

Under chapter 182, Laws 1903, amending section 2573, Rev. Pol. Code, in order for one to acquire a miner's lien, the work performed or material furnished must be performed or furnished

"at the request of the owner or owners or his or their agents." In view of finding C, it cannot be claimed that the material and labor were furnished at the direct instance and request of the owner of the property, as it is therein specifically found that the contracts for the work and labor were "made with the Branch Mint Operating Company." The judgment rendered cannot be supported upon the finding that the operating company had an interest in the property, because, if based upon that finding, the court would have to determine what that interest was and the lien would be against such interest only, while the judgment, as rendered, established a lien against the whole property, including the interest therein of the lessor company. To sustain the judgment, the trial court must have found that, while the contracts for labor and material were made with the operating company and in its name and behalf without any understanding or claim that it was acting for the owners of the mining property, yet that there was an undisclosed agency existing, and the operating company was, unknown to plaintiffs, in truth and fact acting for such owner.

[1] We think the law is well established that, where one knows a party with whom he contracts to be in fact the agent of a third party, yet, knowing that fact, he enters into a contract with such party as principal and not as agent of the real principal, the contract becomes one merely with the agent, and the other party to the contract by his acts elects to look to the agent only for any recovery under such contract. In Rockell on Mechanics' Liens, § 31, it is said: "In all cases the materialman or laborer must at his peril find out the authority of the agent, but, if the owner holds out a person as having the proper authority, he is estopped from asserting to the contrary. If, however, the agent contracts on his own credit, this will show that there is no intention to charge the building, and no lien can be taken upon such contract." In Davidson v. Jennings, 27 Colo. 187, 60 Pac. 354, 48 L. R. A. 340, 83 Am. St. Rep. 49, the court said: "A mechanics' or miners' lien is the creature of the statute, and attaches only by virtue of work being done or materials furnished under a contract, express or implied, with the owner of the property upon

which the lien is claimed, and the burden of proving such contract rests upon the party asserting it; and he must ascertain for himself that the party with whom he deals holds such a relation to the work being done, and the property upon which the same is done, as will entitle him to claim a lien for the work or material which he furnishes." Rico, etc., Co. v. Musgrave, 14 Colo. 79, 23 Pac. 458; Tritch v. Norton, 10 Colo. 337, 15 Pac. 680; Henry, etc., Co. v. Fisherdick, 37 Neb. 207, 55 N. W. 643; Brown v. Cowan, 110 Pa. 588, 1 Atl. 520.

[2] We agree with the findings of the court in Trustees, etc., v. Young, 2 Duv. (Ky.) 583: "They [the employes] might have ascertained the true state of the case. It was their duty to know it, and therefore they must be presumed to have known it." It therefore follows that, under finding C, the respondents, knowing of the contract under which the lessee was working the mine, contracted with it as principal and in its behalf. This is a complete defense to any claim against the lessor. In Reese v. Bald Mountain Gold Min. Co., 133 Cal. 285, 65 Pac. 578, the court said: "The appellant in its answer alleged that plaintiffs well knew the status of Pugh and his interest under the contract, and that with such knowledge they worked for Pugh as principal and looked to him for their wages. This, if true, was a valid defense, and raised a material issue."

[3] But, even if it should be held that the respondents were not bound to know under what authority their employer was acting, and it should be urged that they contracted with it, supposing it to be the real owner of the mining property and were in total ignorance of the fact that the other company owned the mine, yet we would be met with two questions both of which must be answered in affirmative before respondents could maintain their liens as against the property of the mining and milling company: (1) Can respondents hold the lessor company as an undisclosed principal without both allegations and findings to the effect that they entered into the contracts with the lessee not knowing of the existence of the principal for whom the lessee was acting? (2) Under the contract of lease, was the lessee the agent of the

lessor with power to incumber its property with miners' liens? We think there can be no question but that, in view of finding C, it would be necessary, in order for respondents to be entitled to their judgment, that the court should make further findings to the effect that the respondents dealt with the lessee in ignorance of the undisclosed principal. There was no such finding nor any allegations in the complaint to support same.

[4] What we have said above really disposes of this appeal, but, in view of the fact that the cause must be remanded for a new trial and upon such retrial the pleadings might be amended and proof offered meeting the above defects, we deem it advisable to consider the other question, which goes to the real merits of the cause now before us. Did the contract make the operating company the agent of the lessor with authority as such agent to contract for labor and material and incumber with liens, the lessor's interest in the property?

[5, 6] Respondents lay considerable stress upon the fact that the officers of the two companies were the same, and say: "It is evident that the lion's skin of the Branch Mint Operating Company was merely thrown over the Branch Mint Mining & Milling Company in order to conceal its identity, and this is shown by the provisions of the lease itself." It is true that the signing of the contract by the same persons on behalf of each company might be a suspicious circumstance, and be received either as evidence supporting fraud or an allegation of the corporate identity of the two companies if any such issue had been raised; but there was no such issue raised, and, for the purposes of this appeal, it must be presumed that the contract was entered into in good faith, under proper motives, and for proper purposes, and the fact that the officers of the two corporations may be in whole or in part the same is not in itself proof that the one corporation is the agent of the other. United Mines Co. v. Hatcher, 79 Fed. 519, 25 C. C. A. 46.

Respondents contend that, "if a lessor authorizes the construction of improvements upon land belonging to him, he makes the lessee his agent for the purpose of making such improvements

if such improvements become his at the termination of the lease." Respondents have cited numerous cases in support of the above proposition, but an examination of same discloses that the decisions in many were controlled by the peculiar statutory provisions, and that in nearly or quite all of the cases cited it does not appear that improvements were merely permitted at the option of the lessee, but it appears that improvements were required by lessor and covenanted by lessee; and, moreover, it appears in many of these cases that, either directly or indirectly, the cost of the improvements was to be borne by the lessor, thus making such leases in truth and fact what are known as "improvement leases." Such was the case of Whitcomb v. Gans, 90 Ark. 469, 119 S. W. 676, in which the court said: "We need not go so far as to hold that a lessor may make his property subject to lien merely by consenting for the lessee to make improvements. The lessor in the present case did more than that. She not only consented to the making of the improvements, but she bound the lessee to do so, and expressly agreed to pay for same by deducting the cost thereof from the rent. We have no hesitancy in holding that her property is subject to the lien." A reading of many of the authorities cited by respondents will also show that, where not controlled by some express provisions of statute, one of the controlling facts in each was that there was an actual improvement through which the owner of the fee title was benefited. It must, however, be conceded that there is "dictum" to be found in the opinion in Higgins v. Carlotta Mining Co., 148 Cal. 700, 84 Pac. 758, 113 Am. St. Rep. 344, supporting respondents' contention, and the lease in that case was in its provisions very similar to the one in case at bar. Respondents cite the opinion of the court in Winslow Bros. Co. v. McCully, etc., 169 Mo. 236, 69 S. W. 304, as "directly in point." While the court held that, under the facts in that case, the lessee was the agent of the lessor, which holding, we think, under the facts therein, was clearly correct, it will also be found that the court therein cites with approval the following from 20 Am. & Eng. Ency. Law (2d Ed.) 319: "On the other hand, the mere fact that an owner consents to a tenant's making alterations or improvements upon the demised premises, nor the

fact that the tenant has contracted with the owner to make certain improvements on the leased premises, does not make the land or the landlord's interest in the land subject to a mechanic's lien; for in such cases the tenant acts for himself, and not as agent for the owner."

[7, 8] We believe the following propositions must be conceded: Every claim of lien must be founded upon a contract entered into with the owner either directly or indirectly. Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612, and authorities therein cited. No relation of agency exists between lessor and lessee as such lessor and lessee. Pinkerton v. Le Beau et al., 3 S. D. 440, 54 N. W. 97; Wilkins v. Abell, supra, and cases therein cited; Schweizer v. Mansfield et al., 14 Colo. App. 236, 59 Pac. 843; Hadley v. Cummings, 7 Ariz. 258, 64 Pac. 443; Rothe v. Bellingrath, 71 Ala. 55; Gates v. Fredricks, 5 Ariz. 343, 52 Pac. 1118; Williams v. Gold Mining Co., 35 Colo. 127, 83 Pac. 780. In Gates v. Fredricks, supra, it was held: "Parties furnishing material or doing labor for a leaseholder undoubtedly may have a lien against the particular estate of the leaseholder; but to hold the owner of the property responsible, and his estate in the property responsible, would be to put the landlord at the mercy of the tenant. Under such circumstances, the tenant could make any kind of improvements at the expense of the property." In Hopkins v. Hudson, 107 Ind. 191, 8 N. E. 91, it was held: "No analogy can be maintained between the case of a contractor, who is supposed to possess implied authority to bind the property of the owner, to the extent of subjecting it to a lien imposed by law in favor of subcontractors and materialmen, and that of a tenant or lessee, who has no such authority. In the one case the relation warrants the inference of authority. In the other, no authority is implied. The extent of the power or authority of the lessee is to bind such interest, and such only, as he possesses in the property. Unless an actual agency is established, the interest of the lessee alone is chargeable."

It seems clear, then, that the agency, if any, of a lessee, must rest upon the peculiar provisions of the contract, upon the fact

that the lessor has bound the lessee to improve the lessor's property, such improvement either to be at all times the property of lessor or to become his property upon termination of lease, or upon the fact, that, under the contract, the lessor covenants to bear, directly or indirectly, the cost of the improvement. An examination of the contract of lease herein shows that the lessor did not bind the lessee to in any manner improve said mining property; that, at the most, there was a mere permission given the lessee to do such work and make such improvements as were necessary for carrying out the purposes of the lease; that the only provision under which it could be held that the lessor bound itself to bear any expense was the provision that "operating expenses" should be deducted from gross earnings, thus throwing one-third of "operating expenses" upon the lessor; that there was no provision under which the lessee was bound to leave upon the property, upon termination of lease, any improvement made by lessee if same was severable from such mining property. In the case of Williams v. Gold Min. Co., supra, a lien was sought against the lessor for work and material furnished the lessee, and the court, in passing upon such claim of lien, said: "Provision was made for possession of the mine under the contract of leasing, which permitted the lessee to mine, remove, and sell ore therefrom, and contained the usual clauses for mining in a workmanlike manner, keeping the mine in safe condition, allowing the lessor to inspect the mine and the lessee's books, and a forfeiture for failure by the lessee to keep his covenants under the lease. The lessee was required to commence work within three days from the date of the contract, and agreed to work two shifts continuously, with at least five men on each shift, except when delayed by unavoidable accidents. There was reserved as rent a royalty of 15 per cent. of the net proceeds of ore mined, and this royalty formed no part of the purchase price under the option. * * * In Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612, it was decided that a mechanics' lien will not attach to the interests of an owner of a mine for work done or material furnished in working or developing the same, where the work is done or material furnished at the instance of, or under contract with, one whose only interest is that

of a lessee. The claimants here say that this case was not controlled by that decision, but falls within the doctrine declared in Shapleigh v. Hull, 21 Colo. 419, 41 Pac. 1108, and Colo. Iron Wks. v. Taylor, 12 Colo. App. 451, 55 Pac. 942. In these two cases it was held that, under a contract of sale of real estate which requires the purchaser to make certain improvements thereon as a part of the consideration, the purchaser becomes the agent of the vendor for that purpose, and both the title of the vendor and the vendee is subject to a lien for materials furnished and labor performed in the erection of such improvements by the purchaser. * * * The possession of the reduction company was under the contract of leasing, and was solely for the purpose of working and developing the mine, under the lease, at a stipulated rent in the nature of royalty. A lien therefore does not exist as against the vendor owner on the ground that the work and material were contracted for by a vendee in possession under a contract of sale which required him to make improvements. Nor can a lien be asserted as against the lessor owner on the ground that the lessee here occupied some relation to the mine, with respect to the working of it, other than that of lessee. The contract of leasing did not call for the erection of any permanent improvements. Its only requirement of the lessee in respect to work was that it should begin development work within a certain time, and continuously employ two shifts of five men each. In the nature of things a lease of a mine contemplates that the lessee must do at least ordinary development work. A mine is valuable principally, if not wholly, on account of the ore it contains, and to extract the same necessarily requires work to be done upon it. The work required here was merely ordinary development work, which brings the case within the holding in Wilkins v. Abell, supra. In other words, the labor performed and materials furnished by the claimants, for which a lien is sought, were done for, and furnished to, one who was in possession and developing the same, whose only relation to the property, so far as concerns any requirement of work thereon, was that of a mere lessee. Other cases in line with our conclusion are Maher v. Shull, 11 Colo. App. 322, 52 Pac. 1115; Schweizer v. Mansfield, 14 Colo. App. 236, 59 Pac.

843; Little Valeria M. & M. Co. v. Ingersoll, 14 Colo. App. 240, 59 Pac. 970. In Couch v. Welsh, 24 Utah, 36, 66 Pac. 600, an instrument like that under consideration was held to be a lease with an option to purchase."

In Griffin v. Hurley, 7 Ariz. 399, 65 Pac. 147, the court said: "It is quite common in Arizona for owners of mines or mining claims, who are not able to work and develop the mines themselves, to lease their mining property to some one who is willing and able to work and develop it, which process comes within the common appellation of 'chloriding'; and in many parts of the territory chloriding is a settled industry, furnishing employment and profit to thousands of miners. Such chloriding contracts or leases have not in view either the improvement of the mine or its depletion, but only the operation of the mine for immediate profits, the same as the owner of a farm may lease his land to be cultivated, the lessee paying therefor as rent either money or a portion of the products. In such an operation a mine may be improved, it may be developed into a bonanza, or it may be worked out and depleted. To hold that one who has leased a mine and takes the bulk of the proceeds, paying the owner of the mine by a share of the profits as rental, can so operate the mine that the miners working for him can file liens against any other interest in the mine than that which the lessee holds, would be destructive of the owner's rights. No such right is given by statute. * * * It may sometimes be the case that he who is called a 'lessee' becomes an agent, and the instrument between the owner and the so-called lessee, although denominated a 'lease,' is in fact an operating contract for the benefit of the owner of the mine, in its development, in which case the so-called lessee may be declared to be the agent of the owner of the mine, as in Eaman v. Bashford, 4 Ariz. 199, 37 Pac. 24." The contract or lease in case at bar did not constitute the lessee an agent of the lessor with power to encumber the property of lessor with miners' liens. If such agency existed, it rested upon facts dehors the said contract, and finding 1 must fall.

The judgment appealed from is reversed, and cause remanded to trial court.